**O. Bernard STARKMAN, Plaintiff,**

v.

**Henry I. SEROUSSI et al., Defendants.**

**No. 73 Civ. 3826.**

United States District Court,
S. D. New York.

June 18, 1974.

Esther Antell, New York City, for plaintiff.

Gerwin & Ehrenclou, New York City, for defendant Shearson, Hammill & Co., Incorporated; Richard L. Weingarten, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

This case presents the issue whether an alleged violation of rules of the New York Stock Exchange adopted pursuant to the Securities Exchange Act of 1934 [1] grounds a cause of action under that Act so as to vest exclusive jurisdiction in the federal courts and thereby preclude the enforcement of an arbitration agreement under Wilko v. Swan.[2]

Plaintiff, a customer of Shearson, Hammill & Co., Incorporated ("Shearson"), a securities broker and dealer, a member of the New York Stock Exchange, commenced this action against that firm, Henry I. Seroussi ("Seroussi"), its registered representative, and Leila Seroussi, his daughter, to recover damages for violations of the 1933 and 1934 federal securities laws, rules and regulations promulgated thereunder, and rules of the New York Stock Exchange, all stemming from a purchase of 2000 Leasco Corp. warrants in plaintiff's margin account maintained by Shearson

---

1. §§ 6 and 19, 15 U.S.C. §§ 78f and 78s (1970).

2. 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953).

and serviced by Seroussi. Jurisdiction is asserted under section 27 of the Exchange Act [3] and section 22 of the Securities Act.[4]

Plaintiff alleges three separate actions, which are interrelated factually. The complaint alleges that on October 22, 1971 Seroussi owned or controlled a call to purchase 2000 Leasco Corp. warrants at $13.25 each, but did not have the necessary funds to exercise the option which was then below the market and was expiring that day; that on Seroussi's representations that the purchase of such options would result in a profitable transaction, plaintiff was induced to purchase the warrants in his name with the credit available in his margin account with Shearson; that Seroussi agreed to share the profits realized equally with plaintiff and to guarantee him against any losses. To carry out the arrangement Seroussi executed two documents: first, an agreement as agent for his daughter, defendant Leila Seroussi, setting forth the understanding with respect to profits and the guarantee against losses; second, a guarantee of performance by his daughter, and in the event of her nonperformance, to indemnify plaintiff. The price of the warrants declined; thereafter Seroussi repeatedly dissuaded plaintiff from selling them until finally, upon the refusal of Seroussi and his daughter to take the warrants off his hands, plaintiff sold them, sustaining a total loss of $22,544.

The first cause of action charges that Seroussi's agreement with plaintiff was expressly prohibited by Rule 345.17 of the New York Stock Exchange [5] by which Seroussi was bound in order to function as a registered representative, which provides that he will not "guarantee any customer against loss in his account" or "take or receive directly or indirectly a share in the profits of any customer's account, or share in any losses sustained in any such account"; further, that Seroussi executed the written agreements which violated this rule as part of a scheme or device to circumvent the rule and regulation of the New York Stock Exchange and his fiduciary duty as registered representative and agent of plaintiff. Shearson, Seroussi's employer, is charged with the violation of Rule 345.19 of the Exchange, which requires members to make a thorough inquiry and check into the background and previous record of those they contemplate employing.[6] It is alleged that had Shearson done so, it would have known that at the time it employed Seroussi he had been involved in difficulties earlier that year with his last employer in connection with his speculation in the purchase of puts and calls, particularly Leasco warrants, which activity had been duly reported to the New York Stock Exchange and for which his prior service had been terminated for cause. Shearson is also charged with the violation of Rule 405 of the Stock Exchange, the "Know Your Customer Rule" or the

---

3. 15 U.S.C. § 78aa (1970).

4. 15 U.S.C. § 77v (1970).

5. "[E]ach registered representative, in consideration of the Exchange's approving his application, shall sign the following statements:

  .    .    .    .    .

  (B) That I will not guarantee any customer against loss in his account or in any way represent to any customer that I or my employer will guarantee the customer against such losses.

  (C) That I will not take or receive, directly or indirectly, a share in the profits of any customer's account, or share in any losses sustained in any such account. . . ."

6. "INVESTIGATIONS AND RECORDS.— Members and member organizations should make a thorough inquiry into the previous record and reputation of persons whom they contemplate employing. The background and reputation check should, whenever possible, include at least personal conversations with all employers during the previous 3 years and verification before or promptly after employment of business history for the previous 10 years. . . . Verifying and investigation should be done by a partner or voting stockholder, or by an authorized person under their supervision."

Rule of Due Diligence,[7] which requires members to "learn the essential facts relative to every customer" or "margin account" and "to supervise diligently all accounts handled by registered representatives of the organization"; it is alleged that Shearson, in accepting and executing the orders for the purchase of Leasco warrants for plaintiff's account without inquiry into and ascertaining Seroussi's interest therein failed to exercise the due diligence required under Rule 405. Finally, it is alleged the wrongful acts and transactions were accomplished through instrumentalities of interstate commerce.

The first cause of action further alleges that the defendants' violation of the Stock Exchange rules gives rise to a federal claim for violation of sections 6[8] and 19[9] of the Exchange Act of 1934, pursuant to which the New York Stock Exchange was registered with the Securities and Exchange Commission and the Stock Exchange rules were filed.

Plaintiff's second cause of action is based on the same factual allegations as in the first, and claims that thereby defendants violated section 17 of the Securities Act of 1933,[10] section 10(b) of the Exchange Act,[11] and Rule 10b–5 promulgated thereunder,[12] which generally condemn devices, acts or conduct which operate as a fraud or deceit upon a purchaser.

The third cause of action charges that Shearson aided and abetted the violations previously alleged.[13]

Before answering, Shearson served a demand upon the plaintiff that the claims set forth in the complaint be submitted to arbitration in accordance with a provision contained in a customer's margin agreement which plaintiff signed when he opened his margin account. Plaintiff rejected this demand, following which Shearson served its answer [14] containing an affirmative defense that the subject matter of the litigation did not involve a violation of the federal securities laws and was embraced within the arbitration provision of the margin agreement.

■ Plaintiff now moves for a stay of arbitration upon the grounds: (1) Shearson waived its right to arbitration; (2) the agreement is void for lack of mutuality since it was signed only by plaintiff; (3) plaintiff's claims as alleged in the complaint are not embraced in the agreement; and (4) the arbitration clause is void under the Wilko v. Swan doctrine.[15] The first three contentions can readily be disposed of since upon the facts presented they are without merit. The claim of waiver is predicated upon the fact that in an exchange of correspondence prior to the commencement of suit "no mention was ever made of arbitration and that it was nev-

---

7. "Every member organization is required through a general partner, a principal executive officer or a person or persons designated under the provisions of Rule 342(b)(1) to

    (1) Use due diligence to learn the essential facts relative to every customer, every order, every cash or margin account accepted or carried by such organization and every person holding power of attorney over any account accepted or carried by such organization.

    (2) Supervise diligently all accounts handled by registered representatives of the organization. . . ."

8. 15 U.S.C. § 78f (1970).

9. 15 U.S.C. § 78s (1970).

10. 15 U.S.C. § 77q (1970).

11. 15 U.S.C. § 78j(b) (1970).

12. 11 C.F.R. § 240.10b–5 (1973).

13. If Seroussi is liable upon the claims advanced, Shearson also could be held liable under § 20 of the Exchange Act, 15 U.S.C. § 78t (1970), as a controlling person "unless [it] acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action." *See* Hecht v. Harris, Upham & Co., 283 F.Supp. 417, 438–439 (N.D.Cal.1968), modified on other grounds, 430 F.2d 1202 (9th Cir. 1970); Lorenz v. Watson, 258 F.Supp. 724, 732 (E.D.Pa.1966).

14. No demand for arbitration was made by the defendants Seroussi.

15. 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953).

er suggested" by Shearson's attorneys. However, as noted, after commencement of this action, and even before it answered, Shearson served its demand for arbitration and in its answer alleged plaintiff's refusal to arbitrate as an affirmative defense. The timely demand for arbitration negates any claim of waiver, which is never lightly inferred.[16]

■■ Equally without substance is plaintiff's second contention that the arbitration agreement is void because it was signed only by him and not by the defendant and "thus there is no mutuality of obligation." While an arbitration agreement must be in writing to be enforceable, there is no requirement that it be signed. It is sufficient that the parties by act or conduct are committed to it.[17] Under ordinary contract principles there are a variety of ways whereby a party may become bound by a written arbitration provision.[18] Shearson's printed letterhead constitutes a signature.[19]

■ Plaintiff's third contention that "the matters covered in the complaint are not embraced in the customer's margin agreement" disregards the comprehensive and all-inclusive language of the arbitration clause which extends to "any controversy arising out of or relating" to plaintiff's margin account. It clearly encompasses plaintiff's claims arising out of the purchase of securities in that account. Thus, we reach plaintiff's final contention that even if so embraced, Wilko v. Swan voids the arbitration provision.

■ *Wilko's* holding, which was based on sections 14 and 22(a) of the Securities Act of 1933, is equally applicable to their counterparts, sections 29(a) and 27 of the Exchange Act of 1934.[20] In sum, *Wilko* holds that a party's agreement to arbitrate future controversies is void as against his right to maintain his action in the federal court where it is "brought to enforce any liability or duty created by" the Securities Act of 1933 or the Exchange Act of 1934—in other words, where the federal court has jurisdiction of the action under section 22(a) of the Securities Act or section 27 of the Exchange Act. Defendant argues, however, that Wilko v. Swan is inapplicable, since the complaint is confined to a violation of the New York Stock Exchange rules—that the gravamen of all causes of action is the violation of the Stock Exchange rules and that this does not confer a private right of action under the securities laws.

Section 6 of the 1934 Act provides that no Securities Exchange may be registered unless it adopts specified rules,

16. Carcich v. Rederi A/B Nordie, 389 F.2d 692, 695–696 (2d Cir. 1968); Kulukundis Shipping Co., S/A v. Amtorg Trading Corp., 126 F.2d 978, 989 (2d Cir. 1942); Almacenes Fernandez, S.A. v. Golodetz, 148 F.2d 625 (2d Cir. 1945); Shanferoke Coal & Supply Corp. v. Westchester Serv. Corp., 70 F.2d 297 (2d Cir.), aff'd, 293 U.S. 449, 453–454, 55 S.Ct. 313, 79 L.Ed. 583 (1934).

17. 9 U.S.C. §§ 2 and 4 (1970); Fisser v. International Bank, 282 F.2d 231, 233 (2d Cir. 1960); Helen Whiting, Inc. v. Trojan Textile Corp., 307 N.Y. 360, 368, 121 N.E.2d 367 (1954). *See also* A/S Custodia v. Lessin Int'l, Inc., 503 F.2d 318 (2d Cir., June 10, 1974).

18. Fisser v. International Bank, 282 F.2d 231, 233 (2d Cir. 1960).

19. Uniform Commercial Code § 1–201(39).

20. Moran v. Paine, Webber, Jackson & Curtis, 389 F.2d 242, 245 (3d Cir. 1968); Colo-

nial Realty Corp. v. Bache & Co., 358 F.2d 178, 183 n. 5 (2d Cir.), cert. denied, 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966). § 29(a) of the Exchange Act, 15 U.S.C. § 78cc (1970), provides:

"(a) Any condition, stipulation, or provision binding any person to waive compliance with any provision of this chapter or of any rule or regulation thereunder, or of any rule of an exchange required thereby shall be void."

§ 27 of the Exchange Act, 15 U.S.C. § 78aa (1970), provides in pertinent part:

"The district courts of the United States . . . shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder."

including one that must be "just and adequate to insure fair dealing and to protect investors . . . ." [21] The rules of the Stock Exchange which defendants are charged with violating were adopted by the Exchange as a prerequisite to its registration pursuant to sections 6 and 19 of the 1934 Act. The Act vests exclusive jurisdiction in the federal district courts of violations of the Act or "the rules and regulations thereunder and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder." It may be accepted that the Stock Exchange rules themselves are not encompassed by the "rules and regulations thereunder." Thus the issue is narrowed to whether a violation by a member of the Exchange of its rules, filed pursuant to the statute, may be actionable as a violation of a "duty created by this chapter." [22] A number of courts have considered the issue. The leading case on the subject is Colonial Realty Corp. v. Bache & Co.,[23] where Judge Friendly, after noting the significant role intended for stock exchanges in establishing standards to govern the trading of securities and to secure fair trading practices and eliminate fraudulent conduct, further observed:

> "[W]hether the courts are to imply federal civil liability for violation of exchange or dealer association rules by a member cannot be determined on the simplistic all-or-nothing basis urged by the two parties; rather, the court must look to the nature of the particular rule and its place in the regulatory scheme, with the party urging the implication of a federal liability carrying a considerably heavier burden of persuasion than when the violation is of the statute or an SEC regulation. The case for implication would be strongest when the rule imposes an explicit duty unknown to the common law." [24]

The court is satisfied that upon the facts here presented plaintiff has sufficiently carried that burden to establish jurisdiction under section 27 of the Exchange Act.

Actions based upon alleged violations of an Exchange rule governing its membership, which is designed to "insure fair dealing and to protect investors" as specified in section 6(d) of the Exchange Act, may be equated to antitrust litigation where plaintiffs have been considered "private Attorneys General" to aid in the enforcement of the basic statute [25] to protect the public investor.

The rule which Seroussi is charged with violating is not a broad generalized one, "something of a catchall" with vague or uncertain contours that may lend itself to variant interpretations, so that it could reasonably be argued that it was beyond Congressional purpose that its violation would give rise to a civil claim under federal law.[26] The rule here is precise in that as a condition of employment in this self-regulated industry, a registered representative is prohibited from participating in transactions with his or the firm's customers by sharing in profits or by guaranteeing the customer against any losses in his account; clearly it is aimed at protecting the customer from being drawn into questionable transactions or speculative activities far beyond his purse; other purposes are obvious not only for the protection of the customer but also the

---

21. § 6(d), 15 U.S.C. § 78f(d) (1970).

22. *Cf.* Buttrey v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 410 F.2d 135, 142 (7th Cir.), cert. denied, 396 U.S. 838, 90 S.Ct. 98, 24 L.Ed.2d 88 (1969).

23. 358 F.2d 178 (2d Cir.), cert. denied, 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966).

24. *Id.* at 182.

25. *Cf.* Associated Industries v. Ickes, 134 F. 2d 694, 704 (2d Cir.), vacated as moot, 320 U.S. 707, 64 S.Ct. 74, 88 L.Ed. 414 (1943). *See also* United States v. Standard Ultramarine & Color Co., 137 F.Supp. 167, 171 (S.D.N.Y.1955).

26. *Cf.* Colonial Realty Corp. v. Bache & Co., 358 F.2d 178, 182 (2d Cir.), cert. denied, 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966).

public at large, as well as the securities industry itself. A guarantee against losses would not only encourage wide gambling in securities on the part of the customer, but would be an incentive to churning of the customer's account.[27] So, too, Rule 405, here alleged to have been violated by Shearson, is precise and has among its purposes protection of the customer qua customer. The rules here allegedly violated may be considered "an integral part in SEC regulation"[28] in furtherance of the purpose declared in section 6(d) to "insure fair dealing and to protect investors." The defendants in their special relationship to plaintiff impliedly represented they would deal fairly and competently with him.[29] The argument may be made that the agreements signed by Seroussi constituted a misrepresentation to the plaintiff that they were entirely proper and not in violation of any rule of the Stock Exchange and indeed were part of a scheme or device to evade the Stock Exchange rules and thereby defraud plaintiff by inducing him to use his margin account to purchase the Leasco warrants. The alleged violations of the Exchange rules are such an integral part of the transaction as to constitute a sufficient claim for violation of sections 6 and 19 of the Exchange Act.[30]

Plaintiff's allegations, which specify the details of violations of the Stock Exchange rules by the defendants, are by no means "immaterial" or "insubstantial"[31] and upon their face are sufficient to confer jurisdiction under section 27 of the Exchange Act. Plaintiff consequently has "the right to select the judicial forum" in which to prosecute his suit [32] and, in view of section 29 of the Exchange Act, cannot be compelled to submit his claim to arbitration.

The motion to stay arbitration is granted.

27. *Cf.* Hecht v. Harris, Upham & Co., 430 F.2d 1202, 1207 (9th Cir. 1970), aff'g 283 F.Supp. 417, 435–441 (N.D.Cal.1968); Stevens v. Abbott, Proctor & Paine, 288 F. Supp. 836, 846–847 (E.D.Va.1968).

28. Colonial Realty Corp. v. Bache & Co., 358 F.2d 178, 182 (2d Cir.), cert. denied, 385 U. S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966).

29. Hanly v. SEC, 415 F.2d 589 (2d Cir. 1969); Charles Hughes & Co. v. SEC, 139 F.2d 434 (2d Cir. 1943), cert. denied, 321 U.S. 786, 64 S.Ct. 781, 88 L.Ed. 1077 (1944).

30. *Cf.* Buttrey v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 410 F.2d 135 (7th Cir.), cert. denied, 396 U.S. 838, 90 S.Ct. 98, 24 L.Ed.2d 88 (1969). *See also* Avern Trust v. Clarke, 415 F.2d 1238 (7th Cir. 1969), cert. denied, 397 U.S. 963, 90 S.Ct. 997, 25 L.Ed. 2d 255 (1970).

31. Bell v. Hood, 327 U.S. 678, 681–683, 66 S.Ct. 773, 90 L.Ed. 939 (1946); *see* Romero v. International Terminal Operating Co., 358 U.S. 354, 359, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959); Montana-Dakota Utilities Co. v. Northwestern Pub. Serv. Co., 341 U.S. 246, 249, 71 S.Ct. 692, 95 L.Ed. 912 (1951); A. T. Brod & Co. v. Perlow, 375 F.2d 393, 398 (2d Cir. 1967).

32. Wilko v. Swan, 346 U.S. 427, 435, 74 S.Ct. 182, 186, 98 L.Ed. 168 (1953).