In the Matter of the Application of MERRILL LYNCH, PIERCE, FENNER & SMITH, INC. to Compel Arbitration, pursuant to the United States Arbitration Act, Title 9 U.S.C. § 4, Petitioner,

v.

Milton M. MOORE and Sue Kendall Moore, Respondents.

Milton M. MOORE and Sue Kendall Moore, Plaintiffs-Appellants,

v.

MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., a corporation, and Chuck Buland, an individual, Defendants-Appellees.

No 77–1887.

United States Court of Appeals, Tenth Circuit.

Submitted Nov. 14, 1978.

Decided Dec. 29, 1978.

Rehearing Denied Jan. 24, 1979.

Frank Gregory and Benjamin P. Abney, of Chapel, Wilkinson, Riggs, Abney & Keefer, Tulsa, Okl., for plaintiffs-appellants.

John S. Athens and Douglas L. Inhofe of Conner, Winters, Ballaine, Barry & McGowen, Tulsa, Okl., for defendants-appellees.

Before McWILLIAMS, DOYLE and LOGAN, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

The question involved in this case is the enforceability of an arbitration clause in an investment contract entered into by the plaintiffs-appellants, the Moores, with Merrill Lynch, Pierce, Fenner & Smith, Inc. Named as a defendant-appellee is one Chuck Buland, an account executive with the Merrill Lynch organization. The particular stipulation provided that "[a]ny controversy between us arising out of such option transactions of this agreement shall be settled by arbitration before the National Association of Securities Dealers, Incorporated, or the New York Stock Exchange, or the American Stock Exchange * * *."

The suit filed by the appellants is alleged to arise under 15 U.S.C. § 77q(a) and § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b). However, we need not determine whether the stipulation embraced this type of suit sounding as it does in tort rather than in contract, because it turns on the related question, that is, whether remedies arising under the Securities Act of 1933 and the Securities Exchange Act of 1934 are waived as a result of the stipulation providing for arbitration.

The action herein was originally brought in the State District Court at Tulsa, Oklahoma. The complaint alleged negligence and breach of fiduciary duty by Merrill Lynch in the handling of the plaintiffs' investments. Further allegations were that the defendants had violated rules of the National Association of Securities Dealers and the New York Stock Exchange. Merrill Lynch was a member of both organizations. This original suit was started on January 19, 1976.

On April 2, 1976, Merrill Lynch brought the matter to a head by filing a petition in the U.S. District Court, which sought an order which would have required the plaintiffs to submit the controversy to arbitration pursuant to § 4 of the United States Arbitration Act, 9 U.S.C. § 1, et seq. This was a diversity action.

The next move came from the Moores, who on April 29, 1976, dismissed their claim

in State Court and filed a new complaint in the United States District Court. It was this complaint that alleged that the defendants had violated § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a); § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b); and Rule 10b–5, 17 C.F.R. § 240.10b–5.

The District Court described the complaint as alleging that the device, scheme and artifice to defraud was employed toward plaintiffs, who were not sophisticated business people.[1]

After a variety of hearings before the District Court an order was entered directing the parties to proceed to arbitration before a National Association of Securities Dealers tribunal. It is this judgment which the appellants seek to reverse.

The position of the Moores on this appeal is that under the current case law arbitration clauses such as this are not enforceable, but are void insofar as the federal securities laws are concerned.[2]

## I.

### THE REMEDY UNDER THE 1933 ACT

■ There are a good many decisions which deal with the present question whether securities claims are available to a plaintiff in the face of a waiver provision in a contract calling for arbitration. The situation is also complicated by the Arbitration Act, which itself is based on favorable policy considerations pitted against the Securities Act of 1933, which on its part grants strong remedies to an aggrieved person, see § 22, and which contains also a provision, § 14, which in essence declares that an attempted waiver of the remedy under the Act is void.

The leading authority on the question is that of the Supreme Court in *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). The difference between *Wilko* and the case at bar is that the former considered a violation of § 12(2) of the

1. The words of the trial court describing the claim are as follows:
   the defendant, Bulland [sic], was the agent and representative of Merrill Lynch and through acts and practices, which constituted a device, scheme and artifice to defraud plaintiffs (using instrumentalities of interstate commerce), plaintiffs, although not sophisticated businessmen nor knowledgeable investors familiar with the stock market nor with options, were involved, at the instance of defendants in what they alleged was represented to them as being a "conservative plan" to sell options on certain Dow Chemical Company stock owned by plaintiffs. Needless to say, it is plaintiffs' contention that the account was not handled properly and that they sustained losses and are entitled to recover the sum of $30,000 with interest from the date of judgment.

2. On December 24, 1974, Milton Moore signed a "Standard Option Agreement" prepared by Merrill Lynch. Paragraph five of that Agreement provides:
   Any controversy between us arising out of such option transactions or this agreement shall be settled by arbitration before the National Association of Securities Dealers, Incorporated, or the New York Stock Exchange, or the American Stock Exchange, only. I shall have the right of election as to which of the foregoing tribunals shall conduct the arbitration. Such election is to be by registered mail, addressed to Merrill

Lynch's head office at 165 Broadway, New York, N.Y. 10006, attention of the Law Department. The notice of election is to be postmarked within five days after the date of demand to make such election. At the expiration of the five days I hereby authorize Merrill Lynch to make such election on my behalf.
   On March 12, 1975, Moore signed an additional agreement. This agreement states:
   It is agreed that any controversy between us arising out of your business or this agreement, shall be submitted to arbitration conducted under the provisions of the Constitution and Rules of the Board of Governors of the New York Stock Exchange, except however if the controversy involves any security or commodity transaction or contract relating thereto executed on an exchange located outside of the United States then such controversy, at the election of either of us, shall be submitted to arbitration conducted under the Constitution and rules of such exchange (and if neither of us so elects, arbitration shall be conducted under the provisions of the Constitution and Rules of the Board of Governors of the New York Stock Exchange). Arbitration must be commenced within one year after the cause of action accrued by service upon the other of a written notice of intention to arbitrate, naming therein the arbitration tribunal.

Securities Act of 1933. The case at bar is concerned with claims allegedly arising under both the 1933 and 1934 Acts.

Merrill Lynch would have us limit the *Wilko* decision to the § 12(2) case and would have us hold that it does not apply to the Securities Exchange Act of 1934, § 10(b), and Rule 10b–5. However, it is impossible to distinguish the *Wilko* case in this manner, for, as will appear below, the parallel considerations applicable to the two Acts make it impossible to draw such a distinction.

Merrill Lynch seeks to assert other contentions including, first, that the plaintiffs' complaint fails to state a claim upon which relief may be granted under § 17 of the 1933 Act or § 10(b) of the 1934 Act; second, that no relief can be granted as to claims based on the rules of the National Association of Securities Dealers or the New York Stock Exchange; third, that the trial should be stayed pending the outcome of the arbitration proceeding. None of these questions are before us at this time, and the only matter which we are reviewing is the order of the trial court referring the case to arbitration.

The *Wilko v. Swan* opinion, *supra,* written by Justice Reed, was concurred in by six other Justices, with Justices Frankfurter and Minton dissenting, and Justice Jackson filing a special concurring opinion. Involved in that case was a § 12(2) violation of the Securities Act of 1933, which allows a recovery for misrepresentation in the sale of stock. It differs from fraud at common law in that the burden of proof as to lack of scienter is placed on the seller.

In *Wilko,* the action was by a customer against a securities firm seeking damages for alleged misrepresentations in the sale of securities. As in the case at bar there was an agreement for arbitration of any controversy arising in the future between the parties. However, this was ruled to be void under § 14 of the Securities Act of 1933, which provides as follows:

### Contrary Stipulations Void

Sec. 14. Any condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision of this subchapter or of the rules and regulations of the Commission shall be void.

The Supreme Court determined that § 14 above rendered the stipulation for arbitration void. It said that § 22(a) of the 1933 Act could not be waived since it gave the aggrieved person the right to select the judicial forum under the Securities Act, and because attempts to circumvent § 14 were void. The Second Circuit ruling which had determined that the Securities Act did not prohibit the agreement to refer future controversies to arbitration was set aside.

The Court reasoned (in *Wilko* ) that Congress intended to assure that sellers could not maneuver buyers into a weakened position under the Securities Act. The Court described the petitioner's position as being that arbitration lacks the certainty of a suit under the Act to enforce his rights; that the arbitration paragraph of the margin agreement constituted a stipulation that waives "compliance with" the conditions of the Securities Act. The Court distinguished fact situations in which payment for the commodity or disputes as to the amount of money under a contract are involved. Clearly this was not the situation at bar. This claim required findings on the purpose and knowledge of the alleged violator of the law. Arbitrators are less capable of determining this than judges. Furthermore, arbitration awards may be made without explaining reasons, thereby limiting the power to vacate the award. Also, unrestricted submission to an arbitrator does not provide complete review by the court of appeals. Finally, the Court said that:

As the protective provisions of the Securities Act require the exercise of judicial direction to fairly assure their effectiveness, it seems to us that Congress must have intended § 14, note 6, *supra,* to apply to waiver of judicial trial and review.

346 U.S. at 437, 74 S.Ct. at 188.

The Supreme Court did not overlook the policies that favor arbitration, but it finally concluded that the Securities Act policies

outweigh those favoring arbitration so that the Securities Act had to prevail.

Section 14 was applied with full force to render the stipulation void.

The remaining question is whether *Wilko v. Swan, supra,* applies also to the Securities Exchange Act of 1934, to § 10(b) of that Act, and to Rule 10b–5 promulgated pursuant thereto.

The decision in *Wilko* is fully applicable to the § 12(2) remedy under the 1933 Act contained in the case before us, because there is no difference between *Wilko* and the § 12(2) remedy here.

The decisions are virtually unanimous in following the *Wilko* opinion. *Weissbuch v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 558 F.2d 831 (7th Cir. 1977);[3] *Sibley v. Tandy Corp.,* 543 F.2d 540, 543 (5th Cir.), *cert. denied,* 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82 (1977); *Ayres v. Merrill Lynch, Pierce, Fenner & Smith,* 538 F.2d 532 (3rd Cir.), *cert. denied,* 429 U.S. 1010, 97 S.Ct. 542, 50 L.Ed.2d 619 (1976); *Laupheimer v. McDonnell & Co., Inc.,* 500 F.2d 21, 26 (2d Cir. 1974); *Axelrod & Co. v. Kordich, Victor & Neufeld,* 451 F.2d 838, 842–843 (2d Cir. 1971); *Greater Continental Corporation v. Schecter,* 422 F.2d 1100 (2d Cir. 1970); *Starkman v. Seroussi,* 377 F.Supp. 518 (S.D.N.Y.1974); *Reader v. Hirsch & Co.,* 197 F.Supp. 111 (S.D.N.Y.1961).

## II.

### THE REMEDY UNDER RULE 10b–5

■ Merrill Lynch maintains that if *Wilko v. Swan, supra,* has any application, it must be limited to the remedy under the Securities Act of 1933; that it does not therefore apply to the remedy that is alleged under the Securities Exchange Act of 1934. On this it is necessary to recognize that the policy considerations in the two instances with respect to the two remedies are not different. The purpose of the Rule 10b–5 remedy is to protect the vulnerable purchasers of securities from the aggressive and more sophisticated seller (or buyer). Even though the arbitration proceeding may be faster and less costly to the public and, for that matter, to the violator of the contract, the desirability of non-waiver of the remedy would prevail.

The argument is made, however, that the source of the 10b–5 action is a regulation and not directly derived from the 1934 Act. The answer to that is that the non-waiver provision in the 1934 Act, § 29(a), embraces a remedy under a regulation. It provides:

*Validity of Contracts*

Section 29. (a) Any condition, stipulation, or provision binding any person to waive compliance with any provision of this chapter or of any rule or regulation thereunder, or of any rule of an exchange thereby shall be void.

Thus through § 29(a), Congress carried the policy contained in § 14 of the 1933 Act into the Securities Exchange Act of 1934. True it is not a word for word replica, but it explicitly includes any *rule* or *regulation thereunder* which refers to "any provision of this chapter." It also prohibits waiver of any rule of an exchange required thereby. So Congress anticipated the present situation. The cases have been unanimous in so holding. *Greater Continental Corporation v. Schecter, supra; Starkman v. Seroussi, supra; Reader v. Hirsch & Co., supra.*

Merrill Lynch maintains, finally, that *Wilko* has been limited by the Supreme Court in *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974). The issue in *Scherk* was the validity of an arbitration agreement. Also, the complaint in that case arose under the 1934 Act and Rule 10b–5. The arbitration policies were allowed to prevail, but the Securities remedies were being weighed against a different set of facts. Mr. Justice Stewart, the author of the opinion, noted the difference between *Wilko* and *Scherk.* The crucial factor in the decision was not the fact

---

3. Some of the above-cited cases approve the doctrine of the *Wilko* decision and apply it to the 1934 as well as the 1933 Act.

828

that it was a 10b–5 action. The Court was influenced instead by the *Scherk* facts. This was an international transaction which was negotiated in the United States, England, and Germany, signed in Austria, and closed in Switzerland. Many of the clauses of the contract were in controversy. There was a stipulation for arbitration. It was held that the arbitration clause was to be enforced by the federal courts in accordance with the Arbitration Act. It was emphasized that to not give effect to the arbitration clause would under these circumstances create uncertainty, since there were substantial contracts in each of the two countries each on conflicts of laws and also contractual provisions specifying in advance the forum in which disputes shall be litigated together with the applicable law. Foreign contractors were not conscious of the Securities remedies. The Court said:

> Such a contract involves considerations and policies significantly different from those found controlling in *Wilko*. In *Wilko*, quite apart from the arbitration provision, there was no question but that the laws of the United States generally, and the federal securities laws in particular, would govern disputes arising out of the stock-purchase agreement. The parties, the negotiations, and the subject matter of the contract were all situated in this country, and no credible claim could have been entertained that any international conflict-of-laws problems would arise. In this case, by contrast, in the absence of the arbitration provision considerable uncertainty existed at the time of the agreement, and still exists, concerning the law applicable to the resolution of disputes arising out of the contract.

417 U.S. at 515–16, 94 S.Ct. at 2455.

In the case at bar, like the *Wilko* case which is distinguished in *Scherk*, there is no question but that the laws of the United States generally, and the federal securities laws in particular, would govern disputes arising out of stock purchase agreements. The parties, the negotiations and the subject matter were all within this country and no international conflicts of laws problem exists. *Scherk* does not, therefore, apply to the instant case.

The conclusion we reach finds support in cases decided subsequent to *Scherk*. There has been an almost universal tendency in these decisions to distinguish *Scherk*. Thus in *Sibley v. Tandy Corp., supra,* it was held that the securities agreement had to be stayed pending arbitration of the contract claims as "claims under the Federal Securities Acts . . . are generally not subject to arbitration under a preexisting arbitration clause, *Wilko v. Swan, supra; Newman v. Shearson, Hammill & Co., Inc.,* 383 F.Supp. 265 (W.D.Tex.1974)." *Sibley v. Tandy, supra,* at 543.

The *Sibley* court observed that an argument based on *Scherk* could be developed that would limit *Wilko* to claims brought pursuant to the 1933 Act, but it refused to follow such a position. It claimed that the similarities outweighed any differences which might exist and that the view that held *Wilko* applicable to both the 1933 and 1934 Acts was correct.

Two other circuits have cases which are quite similar to our case. Merrill Lynch was the party in both of these and both considered an arbitration agreement as against the remedies in the 1933 and 1934 Acts. The Third Circuit in *Ayres v. Merrill Lynch, Pierce, Fenner & Smith, supra,* perceived the "colorable" contention made by Merrill Lynch that *Wilko* was inapplicable to judicially implied causes of action under the Securities Exchange Act. It was not "persuaded that either the differences between the rights granted in the 1933 and 1934 Acts or any consideration of policy warrant such a distinction." 538 F.2d at 536. In a footnote, the Third Circuit discussed the question raised in *Scherk*, but dismissed it as a dictum which was not controlling.

The issue was tried again in the Seventh Circuit in *Weissbuch v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 558 F.2d 831 (7th Cir. 1977). There *Wilko* and *Scherk* were discussed in detail and it was determined that *Scherk* was limited to situations involving international agreements, and the

argument whether an arbitration clause was valid in relation to Rule 10b–5 cases had not been specifically dealt with by the Supreme Court. The Seventh Circuit concluded that *Wilko* was the proper approach. It said that the significant difference was that in *Scherk,* the parties were equals operating at arms length in protracted and extensive negotiations prior to reaching the agreement. The bargaining posture of the parties in *Wilko* and in *Weissbuch* was different. On this it was said:

> The position of the plaintiff in the instant suit, however, can hardly be analogized to the posture of the Alberto-Culver Company. The contract signed was the defendant's "Standard Option Agreement" and there are no international considerations at play as were present in *Scherk.*

558 F.2d at 835. Thus it was determined that notwithstanding the differences between the two Acts, the reasoning of *Wilko* was applicable nevertheless.

\* \* \* \* \* \*

We are convinced that the trial court was incorrect in its ruling that this case was within the sweep of *Scherk.* The explicit provisions of the two Acts have strong similarities. Unquestionably these are sales which were made in the United States and were to be governed by United States laws, including the Securities Acts and including the non-waiver provisions of those laws. To say that the 10b–5 action is a federal common law remedy which is to be relegated to some inferior position and not to be regarded as having been in the contemplation of the parties does not make sense. Rule 10b–5 is, after all, the most important remedy in both Acts. Besides that, § 29(a) declares that stipulations which would jettison actions arising under rules promulgated pursuant to the statute are void, so we see no legal support for Merrill Lynch's position.

Accordingly, the judgment of the district court is reversed, and the cause is remanded with directions to that court to proceed in accordance with the views expressed herein.