**Fred T. ROMYN, an individual dba Fred & Chi's Investments, a Utah partnership, and Chiye Terazawa, an individual dba Fred & Chi's Investments, a Utah partnership, Plaintiffs,**

v.

**SHEARSON LEHMAN BROTHERS, INC., a Delaware corporation, Foster & Marshall/American Express, Inc., a Washington corporation, and Steven Cardwell, an individual, Defendants.**

Civ. No. C86–69G.

United States District Court, D. Utah, C.D.

Sept. 22, 1986.

Lyndon L. Ricks and Jeffrey Jones, Salt Lake City, Utah, for plaintiffs.

Reid E. Lewis and Jeffrey Robison, Salt Lake City, Utah, for defendants.

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

This matter came on for hearing on August 6, 1986, on defendants Shearson Lehman Brothers, Inc. and Steven Cardwell's Motion for Arbitration. Plaintiffs, Fred T. Romyn and Chiye Terazawa, were represented by Lyndon L. Ricks and Jeffrey Jones, and defendants Shearson Lehman Brothers, Inc. and Steven Cardwell were represented by Reid E. Lewis and Jeffrey Robinson. Legal memoranda were submitted on behalf of all parties, and counsel argued the Motion extensively after which the matter was taken under advisement. The court now being fully advised, sets forth its Memorandum Decision and Order.

## FACTUAL BACKGROUND

In November 1983, the plaintiffs, Fred T. Romyn and Chiye Terazawa ("Romyn & Terazawa") opened brokerage accounts

with the defendant, Shearson Lehman Brothers, Inc. ("Shearson Lehman"). Romyn signed a Customers Agreement for himself and Terazawa. Subsequently, another Customers Agreement was signed by both Romyn & Terazawa. Paragraph thirteen (13) in both agreements provided for arbitration of controversies as follows:

> *Unless unenforceable due to federal or state law,* any controversy arising out of or relating to my accounts, to transactions with you for me or to this agreement or the breach thereof, *shall be settled by arbitration* in accordance with the rules then in effect of the National Association of Securities Dealers, Inc. or the Boards of Directors of the New York Stock Exchange, Inc. and/or the American Stock Exchange, Inc. as I may elect.... (emphasis added)

Still later, on August 24, 1983, Romyn & Terazawa both executed a Commodity Customer Agreement which contained a similar provision in a separate paragraph entitled "Arbitration Agreement," which was separately signed.

On January 24, 1986, Romyn & Terazawa instituted this action to recover alleged losses in their brokerage accounts, asserting that the defendants' conduct violated federal law (the Securities Act of 1933, the Securities Exchange Act of 1934, the Racketeer Influenced & Corrupt Organizations Act (RICO) and the Commodity Exchange Act), as well as state law (Utah's Racketeering Influences & Criminal Enterprise Act (RICE), Utah's Uniform Securities Act, common law fraud, and breach of fiduciary duty). The defendants move this court to compel arbitration of all claims in this action pursuant to the Federal Arbitration Act.[1]

1. *Claims Under the Securities Act of 1933 and the Securities Exchange Act of 1934*

   ▪ Romyn & Terazawa allege that the defendants' conduct violated sections 12(2), 15 and 17 of the Securities Act of 1933, as well as sections 10, 20 and Rule 10b–5 under the Securities Exchange Act of 1934, and maintain that such claims are not subject to arbitration. We agree that such claims may not be referred to arbitration in spite of the clearly worded arbitration clause. A so-called "anti-waiver" provision has been enacted into federal law which precludes enforcement of arbitration provisions with reference to claims involving securities under the 1933 Act. The law provides:

> Any condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision of this subchapter or of the rules and regulations of the Commission shall be void.

15 U.S.C. § 77n (1982).[2] The Supreme Court has interpreted this statute to preclude reference of certain claims to arbitration under the 1933 Act. *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). The *Wilko* Court considered claims arising under section 12(2) of the 1933 Securities Act, and held an agreement to arbitrate future controversies concerning such claims to be void under the Act. The Court said:

> Congress has afforded participants in transactions subject to its legislative power an opportunity generally to secure prompt, economical and adequate solution of controversies through arbitration if the parties are willing to accept less certainty of legally correct adjustment. On the other hand, it has enacted the Securities Act to protect the rights of investors and has forbidden a waiver of any of those rights. Recognizing the advantages that prior agreements for arbitration may provide for the solution of commercial controversies, we decide that *the intention of Congress concerning*

---

**1.** Section 2 of the Arbitration Act recognizes that arbitration agreements may be "void or unenforceable where grounds exist at law or in equity for the revocation of any contract." 9 U.S.C. §§ 1 to 14 (1982).

**2.** A similar "anti-waiver" provision is contained in the 1934 Act. 15 U.S.C. § 78cc(a) (1982).

*the sale of securities is better carried out by holding invalid such an agreement for arbitration of issues arising under the Act.*

346 U.S. at 438, 74 S.Ct. at 188 (citations omitted) (emphasis added). *Wilko* addressed only the arbitrability of claimed violations under section 12(2) of the 1933 Act. Since that decision was handed down, courts have struggled with application of the *"Wilko* doctrine" to claimed violations of the 1934 Act, as well as other claimed violations of the 1933 Act. A major issue is whether the congressionally enacted anti-waiver provision can be said to apply to claimed violations of section 10(b) of the 1934 Act, and Rule 10b–5, since the private cause of action under these provisions is implied rather than express. *See Conover v. Dean Witter Reynolds, Inc.,* 794 F.2d 520 (9th Cir.1986) and cases cited therein. The issue has not been determined by the United States Supreme Court and is reserved as an open question.[3]

In *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Moore,* 590 F.2d 823 (10th Cir.1978), the Tenth Circuit applied the reasoning of *Wilko* to a broad range of claims arising under both the Securities Act and the Exchange Act. *Moore* involved alleged violations of section 17(a) of the 1933 Act, section 10(b) of the 1934 Act and Rule 10b–5. The Tenth Circuit held arbitration agreements applicable to all of these claims to be void and unenforceable given the congressional intent and policy considerations represented in the 1933 and 1934 Acts. The court said:

> The purpose of the Rule 10b–5 remedy is to protect the vulnerable purchasers of securities from the aggressive and more sophisticated seller (or buyer). Even though the arbitration proceeding may be faster and less costly to the public and, for that matter, to the violator of the contract, the desirability of non-waiver of the remedy would prevail.

*Id.* at 827. The *Moore* court concluded:

> The explicit provisions of the two Acts have strong similarities.... To say that the 10b–5 action is a federal common law remedy which is to be relegated to some inferior position and not to be regarded as having been in the contemplation of the parties does not make sense. Rule 10b–5 is, after all, the most important remedy in both acts.

*Id.* at 829.[4] Other recent Circuit Court decisions are in accord with *Moore. See*

> *Wilko's* reasoning cannot be mechanically transplanted to the 1934 Act. While § 29 of that Act ... is equivalent to § 14 of the 1933 Act, counterparts of the other two provisions are imperfect or absent altogether. Jurisdiction under the 1934 Act is narrower, being restricted to federal courts. More important, the cause of action under § 10(b) and Rule 10b–5, involved here, is implied rather than express.
>
> \* \* \* \* \* \*
>
> [T]he question remains open and the contrary holdings of the lower courts must be viewed with some doubt.
>
> *Id.* at 1244.

---

**3.** In *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), the Court upheld a brokerage firm's right to arbitrate common law fraud claims asserted against it despite a factual "intertwining" with non-arbitrable federal securities claims. The question whether claims under the 1934 Act are or are not subject to arbitration was not before the Court. Speaking for the majority, Justice Marshall said:

> Indeed, numerous District Courts and Courts of Appeals have held that the *Wilko* analysis applies to claims arising under § 10(b) of the Securities Exchange Act of 1934 ... and that agreements to arbitrate such claims are therefore unenforceable....
>
> \* \* \* \* \* \*
>
> Dean Witter and *amici* representing the securities industry urge us to resolve the applicability of *Wilko* to claims under § 10(b) and Rule 10b–5. We decline to do so.... [T]he question whether *Wilko* applies to § 10(b) and Rule 10b–5 claims is not properly before us.
>
> *Id.* at 1240, n. 1.

Justice White's concurring opinion contains the following language:

**4.** The *Moore* court rejected the argument that the anti-waiver provision should not be applied to regulations under the 1934 Act such as Rule 10b–5:

> [T]hrough § 29(a), Congress carried the policy contained in § 14 of the 1933 Act into the Securities Exchange Act of 1934. True it is not a word for word replica, but it explicitly includes any *rule* or *regulation thereunder* which refers to "any provision of this chapter." It also prohibits waiver of any rule of

*McMahon v. Shearson/American Express,* 788 F.2d 94, 96 (2d Cir.1986), *Miller v. Drexel Burnham Lambert, Inc.,* 791 F.2d 850 (11th Cir.1986); *Conover v. Dean Witter Reynolds, Inc.,* 794 F.2d 520 (9th Cir. 1986).

In accordance with the Tenth Circuit pronouncement in *Moore,* this court holds that the claims here asserted involving securities under both the Securities Act of 1933 and the Securities Exchange Act of 1934 are not subject to arbitration, and hereby denies defendants' Motion for Arbitration as to such claims.[5]

### 2. Claims Under the Racketeer Influenced and Corrupt Organizations Act

■ Defendants have also moved to compel arbitration of plaintiffs' claims under the Racketeer Influenced and Corrupt Organizations Act (RICO). 18 U.S.C. §§ 1961–68 (1982). Unlike the Securities Acts, RICO does not contain an anti-waiver provision. In determining the RICO arbitrability issue, countervailing policy considerations which are presented in the Arbitration Act and the RICO statute must be balanced. As to the Federal Arbitration Act, the United States Supreme Court has recognized the "preeminent concern of Congress" in preserving the validity of private arbitration agreements through the enactment of that statute. *Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). More recently, in *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985), the Supreme Court approved referral of claims under the anti-trust laws to arbitration, noting the strong federal policy favoring arbitration. The Court said:

> an exchange required thereby. So Congress anticipated the present situation.
> 590 F.2d at 827 (emphasis in original).

5. Romyn & Terazawa's claims under section 15 of the '33 Act and section 20 of the '34 Act are also governed by the *Moore* analysis since they are derivative of the other claims asserted under the 1933 and 1934 Acts.

6. The *Mitsubishi* court noted: "Of course, courts should remain attuned to well-supported claims

[W]e find no warrant in the Arbitration Act for implying in every contract within its ken a presumption against arbitration of statutory claims.

\*   \*   \*   \*   \*   \*

"[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration. The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."

\*   \*   \*   \*   \*   \*

[W]e are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals inhibited the development of arbitration as an alternative means of dispute resolution.

*Id.* at 3353, 3354 (*quoting Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). In the absence of such considerations as the presence of fraud,[6] the Court in *Mitsubishi* directed that the congressional policy in favor of arbitration should be balanced against congressional intent and policy expressed in other statutes:

> [A]ll controversies implicating statutory rights are [not] suitable for arbitration.... Just as it is the congressional policy manifested in the federal Arbitration Act that requires courts liberally to construe the scope of arbitration agreements covered by that Act, *it is the congressional intention expressed in*

that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds 'for the revocation of any contract.' ... But, absent such compelling considerations, the Act itself provides no basis for disfavoring agreements to arbitrate statutory claims by skewing the otherwise hospitable inquiry into arbitrability." *Id.* at 3354–3355 (citations omitted).

*some other statute on which the courts must rely to identify any category of claims as to which agreements to arbitrate will be held unenforceable.*

105 S.Ct. at 3355 (emphasis added).

It has been noted that RICO was enacted to prevent and to reverse infiltration of legitimate business by elements of organized crime. *S.A. Mineracao da Trindade-Samitri v. Utah Int'l, Inc.,* 576 F.Supp. 566 (S.D.N.Y.1983), *aff'd,* 745 F.2d 190 (2d Cir.1984). The *Samitri* court held RICO claims to be non-arbitrable because the resolution of RICO civil claims may impact not only the individuals involved, but also society at large in seeking to achieve the eradication of organized crime. 576 F.Supp. at 575. Similarly, in *Wilcox v. Ho-Wing Sit,* 586 F.Supp. 561, 567 (N.D. Cal.1984), the district court noted this public policy argument and held that RICO case law was "sufficiently embryonic that its development [is] better left to courts than to arbitrators." Other cases have held that RICO claims should not be referred to arbitration. *McMahon v. Shearson/American Exp., Inc.,* 788 F.2d 94 (2nd Cir.1986); *Witt v. Merrill Lynch, Inc.,* 602 F.Supp. 867 (W.D.Pa.1985); *Jacabson v. Merrill Lynch, Inc.,* 605 F.Supp. 510 (W.D. Pa.1984); *Universal Marine Ins. Co. v. Beacon Ins. Co.,* 588 F.Supp. 735 (W.D.N. C.1984). On the other hand, in the wake of *Mitsubishi,* several courts recently have found RICO claims to be arbitrable. *Bob Ladd, Inc. v. Adcock,* 633 F.Supp. 241 (E.D.Ark.1986); *West v. Drexel Burnham Lambert, Inc.,* 623 F.Supp. 26 (D.C.Wash. 1985); *Sacks v. Dean Witter Reynolds, Inc.,* 627 F.Supp. 377 (C.D.Cal.1985); *Ross v. Mathis,* 624 F.Supp. 110 (N.D.Ga.1985); *Development Bank of Phillipines v.*

*Chemtex Fibers, Inc.,* 617 F.Supp. 55 (D.C. N.Y.1985); *Finn v. Davis,* 610 F.Supp. 1079, 1083 (S.D.Fla.1985).

In *Smoky Greenhaw Cotton Co., Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 785 F.2d 1274, 1281 (5th Cir.1986), the Fifth Circuit at first held RICO claims which were predicated upon allegations of mail and wire fraud to be "inappropriate for arbitration." That decision was reached only after the court held that the *Byrd* decision should not be retroactively applied. However, on petition for rehearing, the court en banc amended its decision, expressly reserving the issue of arbitrability of RICO claims in the light of *Mitsubishi.* The court emphasized that *"Mitsubishi* arose in an international antitrust dispute and its holding purports to be limited to that context." In remanding, the court said:

[T]he parties in this case should have the opportunity to argue the applicability of *Mitsubishi* to domestic RICO claims before the District Court.

*Id.* at 1282. On remand, the district court ordered the RICO claims to arbitration, ruling that "the analytical framework set out in *Mitsubishi Motors* should not be strictly limited to situations involving international disputes and is equally applicable to domestic statutory claims." *Smoky Greenhaw,* 650 F.Supp. 220, 222 (W.D.Tex.1986). The Second Circuit recently has refused to refer RICO claims to arbitration notwithstanding *Mitsubishi,* however, on the ground that *Mitsubishi* was only dealing with international disputes and not arbitration agreements arising from domestic transactions.[7]

---

7. *McMahon v. Shearson/American Express, Inc.,* 788 F.2d 94, 98 (2nd Cir.1986). The Second Circuit regarded the international versus domestic distinction as controlling, stating:

> The Supreme Court has recognized that arbitration is appropriate in *international* antitrust disputes because of concerns for international comity, respect for the capacities of foreign and transnational tribunals, and the need for predictability in the international commercial system. *Mitsubishi Motors Corp.*

*v. Soler Chrysler-Plymouth, Inc.,* [473 U.S. 614] 105 S.Ct. 3346 [87 L.Ed.2d 444] (1985). The reasoning of our decision in *American Safety,* however, was not disputed in *Mitsubishi,* "as applied to agreements to arbitrate arising from domestic transactions." 105 S.Ct. at 3355.

If indeed *Mitsubishi* is applicable only to international disputes, that would stand as another basis for the result reached herein. In this regard, although the Tenth Circuit has not di-

■ A review of the foregoing cases reveals a consistency in that in each case RICO claims were not bifurcated from the adjudication of the underlying predicate claims. In each decision where arbitration was ordered, the respective court not only ordered arbitration of the RICO claims, but also required arbitration of the underlying predicate claims. Similarly, where arbitration of RICO claims was refused, the relevant predicate acts were held to be non-arbitrable. A rationalization for this result was suggested in *Wilcox v. Ho-Wing Sit,* wherein the court said that "inasmuch as RICO claims are predicated on violations of the securities laws," the non-arbitrability of federal securities laws claims "also militates against compelled arbitration" in RICO cases. 586 F.Supp. at 567. This is a different test and analysis than the intertwining doctrine rejected in *Byrd.* Under this test, the fact that claims may intertwine is not the reason for tying the arbitrability of RICO claims to the arbitrability of the underlying predicate offenses. Rather, the guidepost is Congressional intent, if any, applicable to the predicate acts judicially incorporated into the RICO statute. Under this approach, the court should

rectly addressed the arbitrability of RICO claims, the domestic versus international distinction was emphasized in *Moore* in holding 1934 Act securities claims to be nonarbitrable. In applying the *Wilko* doctrine to 1934 Act claims, and rejecting the applicability to such claims of the later Supreme Court case of *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974) the *Moore* court said:

This (*Scherk*) was an international transaction which was negotiated in the United States, England, and Germany, signed in Austria, and closed in Switzerland. Many of the clauses of the contract were in controversy. There was a stipulation for arbitration. It was held that the arbitration clause was to be enforced by the federal courts in accordance with the Arbitration Act. It was emphasized that to not give effect to the arbitration clause would under these circumstances create uncertainty, since there were substantial contracts in each of the two countries each on conflicts of laws and also contractual provisions specifying in advance the forum in which disputes shall be litigated together with the applicable law. Foreign contractors were not conscious of the Securities remedies.

look to the law governing the predicate acts upon which the RICO claim is based. If, as here, congressionally motivated anti-waiver provisions preclude arbitration of the predicate acts upon which RICO claims are based, both should be withheld from arbitration. If no anti-waiver statute applies, as in mail and wire fraud cases, both those claims and the RICO claims would be subject to arbitration. Silence in the RICO statute as to arbitrability of RICO claims is somewhat similar to silence in the RICO statute as to applicable statutes of limitations. In struggling to apply appropriate limitation of action statutes to RICO claims, courts have incorporated into the RICO statute analogous statutes of limitations considered to be most nearly applicable to the underlying predicate offenses.[8] The same judicial device is here applied to the arbitrability of RICO claims.

Applying the foregoing test to the case at bar, since the underlying or predicate securities claims are not subject to arbitration under *Wilko* and *Moore,* neither would the RICO claims be subject to arbitration. Accordingly, defendants' Motion for Arbitration with respect to the RICO claims is hereby denied.

\* \* \* \* \* \*

In the case at bar, like the *Wilko* case which is distinguished in *Scherk,* there is no question but that the laws of the United States generally, and the federal securities laws in particular, would govern disputes arising out of stock purchase agreements. The parties, the negotiations and the subject matter were all within this country and no international conflicts of laws problem exists. *Scherk* does not, therefore, apply to the instant case. *Moore,* 590 F.2d at 828.

8. This court applied Utah's 3–year fraud statute of limitations to RICO claims based upon mail and wire fraud predicates in *Argosy 1981–B, Ltd. v. Bradley,* 628 F.Supp. 1359 (D.Utah 1986). *See also Victoria Oil Co. v. Lancaster Corp.,* 587 F.Supp. 429 (D.Colo.1984), wherein the district court said:

Congress has not provided a statute of limitations for civil RICO claims alleged under 18 U.S.C. § 1964(c), and the courts have looked to the most analogous state statutes of limitations in determining whether a particular RICO claim has been timely filed. *Id.* at 431 (citations omitted).

### 3. *Claim Under Commodity Exchange Act*

■ Romyn & Terazawa have asserted a claim against defendants under section 6(*o*) of the Commodity Exchange Act. 7 U.S.C. §§ 1 to 24 (1982), and defendants have also moved to compel arbitration of that claim. No express or implied congressional intent precluding arbitration, nor specific policy justification favoring non-arbitration, has been suggested. In *Salcer v. Merrill Lynch, Pierce, Fenner and Smith, Inc.*, 682 F.2d 459 (3d Cir.1982), the Third Circuit ordered arbitration of such claims, stating:

> It is entirely clear from the record that Mr. Salcer expressly elected to have his claims, arising out of the operation of the account with the defendants, settled by arbitration. Mr. Salcer was not required as a condition precedent to elect arbitration; this was his voluntary choice, and now he is bound by it. We find nothing in the arbitration agreement which is violative of any of the requirements set forth in the regulations under the Commodity Exchange Act.

*Id.* at 460. *See also Smoky Greenhaw v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 720 F.2d 1446 (5th Cir.1983). Defendants' Motion for Arbitration of this claim is granted.

### 4. *Pendent State Claims*

■ Romyn & Terazawa have also alleged numerous state claims under the doctrine of pendent jurisdiction, and defendants have moved to compel such to arbitration. These claims must be compelled to arbitration under the doctrine of *Dean Witter Reynolds, Inc. v. Byrd.* In *Byrd*, the respondent alleged various state law and common law violations in addition to federal securities claims. The Court rejected the previously applicable intertwining doctrine, and required arbitration of the pendent state claims not based upon federal

securities laws even though they may have been based upon similar factual predicates. The Court felt constrained "to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." 105 S.Ct. at 1241. In justification of its position in favor of what would seem to be inefficient and uneconomic bifurcation of claims, the Court said:

> The preeminent concern of Congress in passing the Act was to enforce private agreements into which the parties had entered, and that concern requires that we vigorously enforce agreements to arbitrate, even if the result is 'piecemeal' litigation, at least absent a countervailing policy manifested in another federal statute.

*Id.* at 1242–43. In keeping with the aforesaid expressed philosophy, the Court approved the lower court's denial of motions to stay arbitration of such claims pending resolution of the federal securities issues, stating that "neither a stay of proceedings, nor joined proceedings, is necessary to protect the federal interest in the federal court proceeding...." *Id.* at 1243.[9]

Defendants' Motion for Arbitration is hereby granted with respect to the pendent state and common law claims. We have heretofore denied the motion as to the securities and RICO claims. Proceedings relative to both the arbitrable and nonarbitrable claims shall proceed simultaneously.

This Memorandum Decision and Order will suffice as the court's final action on this motion; no further Order need be prepared by counsel.

---

**9.** The Court recognized "that the preclusive effect of arbitration proceedings is significantly less well settled than the lower court opinions might suggest, and that the consequence of this misconception has been the formulation of un-

necessarily contorted procedures." *Id.* at 1245. The Court continued: "[I]t is far from certain that arbitration proceedings will have any preclusive effect on the litigation of non-arbitrable federal claims." *Id.*