800 F.2d 1032
 55 USLW 2264, Fed. Sec. L. Rep. P 92,933
 Frederick J. WOLFE, and Heather B. Wolfe, his wife,
Plaintiffs-Appellees,
v.
E.F. HUTTON & COMPANY, INC., and Peter Panos,Defendants-Appellants.
Joseph GORMAN, Plaintiff-Appellee,
v.
MERRILL LYNCH, PIERCE FENNER AND SMITH, INC., a foreign
corporation, Defendant- Appellant,
Micah Hollander, Michael Strauss, Defendants.
 Nos. 85-3352, 85-5419.
 United States Court of Appeals,
Eleventh Circuit.
 Sept. 29, 1986.
As Amended Oct. 16, 1986.
 
 Keith Olin, Bennett Falk, Miami, Fla., defendants-appellants.
 Parker, Johnson, Owen & McGuire, Elmo R. Hoffman, Orlando, Fla., Greenfield & Chimicles, E. Stirling Lathrop, Haverford, Pa., Karen A. Gievers, Anderson Moss Russo Gievers & Cohen, P.A., Miami, Fla., plaintiffs-appellees.
 Albert J. Beveridge, III, John S. Guttmann, Robert H. Singletary, Jr., for amicus curiae, Werner Heierli.
 Beveridge & Diamond, Washington, D.C., for amicus curiae.
 Appeals from the United States District Court for the Southern District of Florida.
 Before RONEY, Chief Judge, GODBOLD, TJOFLAT, HILL, FAY, VANCE, KRAVITCH, JOHNSON, HATCHETT, CLARK and EDMONDSON, Circuit Judges,* and HENDERSON,** Senior Circuit Judge.
 VANCE, Circuit Judge:
 We granted rehearing en banc in these cases to determine whether claims brought under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. Sec. 78j(b), and corresponding Securities and Exchange Commission Rule 10b-5, 17 C.F.R. Sec. 240.10b-5, are subject to mandatory arbitration under an arbitration agreement entered into before the claim arose. Adhering to the established law of this circuit, we hold that a pre-claim agreement to arbitrate such claims is not enforceable.
 I.
 Appellees Frederick and Heather Wolfe and Joseph Gorman brought separate suits in their respective district courts in Florida claiming that their respective brokers, E.F. Hutton and Merrill Lynch,[1] were liable under 10b-5[2] and state law for illegally "churning" their accounts--engaging in excessive trading to generate high commissions. In both cases, appellants had signed agreements upon setting up their accounts which included clauses providing that disputes over the accounts would be submitted to arbitration. The brokers, appellants here, sought to enforce the agreements with respect to both the 10b-5 claims and those arising under state law. The district court in Wolfe, No. 85-3352, denied appellant E.F. Hutton's motion to compel arbitration in its entirety. The district court in Gorman, No. 85-5419, granted appellant Merrill Lynch's similar motion with respect to the state claims, but denied arbitration of Gorman's 10b-5 claim.
 On appeal, a panel of this court held that the district courts had properly denied arbitration of the 10b-5 claims but that the Wolfe court should have granted the motion to compel arbitration of the Wolfes' state claims. Wolfe v. E.F. Hutton & Co., 780 F.2d 1032 (11th Cir.1985); Gorman v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 780 F.2d 1032 (11th Cir.1985) (consolidated appeals). The panel noted that under the Supreme Court's decision in Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), the arbitration agreement between E.F. Hutton and the Wolfes was enforceable with respect to claims arising under state law.[3] The court also noted, however, that under Belke v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 693 F.2d 1023, 1025-26 (11th Cir.1982), an agreement to submit a 10b-5 claim to arbitration cannot be enforced. Holding Belke to be binding precedent, the court rejected appellants' contention that Belke and an earlier case from the former fifth circuit, Sibley v. Tandy Corp., 543 F.2d 540, 543 & n. 3 (5th Cir.1976), cert. denied, 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82 (1977), had been undermined by dicta in the Supreme Court's Byrd decision and by Justice White's concurring opinion in that case.
 
 
 1
 Doubt cast by Byrd on the continuing validity of Sibley and Belke has led us to consider the issue of 10b-5 arbitration en banc.
 
 II.
 
 2
 The holding of Belke and Sibley that 10b-5 claims are not arbitrable[4] stems from the Supreme Court's decision more than thirty years ago in Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). In that case the Court held that claims arising under section 12(2) of the Securities Act of 1933, 15 U.S.C. Sec. 77l(2), are not subject to arbitration under an agreement otherwise enforceable under the United States Arbitration Act, 9 U.S.C. Secs. 1-14.
 
 
 3
 The Supreme Court has not extended Wilko to 10b-5 actions. In fact, in Scherk v. Alberto-Culver Co., 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974), the Court noted that
 
 
 4
 a colorable argument could be made that even the semantic reasoning of the Wilko opinion does not control [in a 10b-5 case]. Wilko concerned a suit brought under Sec. 12(2) of the Securities Act of 1933, which provides a defrauded purchaser with the "special right" of a private remedy for civil liability.... There is no statutory counterpart of Sec. 12(2) in the Securities Exchange Act of 1934, and neither Sec. 10(b) of that Act nor Rule 10b-5 speaks of a private remedy to redress violations.... While federal case law has established that Sec. 10(b) and Rule 10b-5 create an implied private cause of action ... the Act itself does not establish the "special right" that the Court in Wilko found significant. Furthermore, while both the [1933 and 1934 Acts] contain sections barring waiver of compliance with any "provision" of the respective Acts, certain of the "provisions" of the 1933 Act that the Court held could not be waived by Wilko's agreement to arbitrate find no counterpart in the 1934 Act. In particular, the Court in Wilko noted that the jurisdictional provision of the 1933 Act ... allowed a plaintiff to bring suit "in any court of competent jurisdiction--federal or state--and removal from a state court is prohibited." .... The analogous provision of the 1934 Act, by contrast, provides for suit only in the federal district courts ... thus significantly restricting the plaintiff's choice of forum.
 
 
 5
 Id. at 513-14, 94 S.Ct. at 2454-55. Despite this statement, however, the Court did not actually decide the issue of 10b-5 arbitration in Scherk; the case was instead decided on another, narrower ground.
 
 
 6
 It was after Scherk that the former fifth circuit decided Sibley. The court noted the "colorable argument" suggested in Scherk but nevertheless affirmed the rulings of several lower courts which had held 10b-5 claims non-arbitrable. The court reasoned that "the similarities between the [1933 and 1934 Acts] far outweigh any differences which might exist...." 543 F.2d at 543 n. 3. The Belke court merely cited and followed Sibley.
 
 
 7
 Then came Byrd. The Court in a footnote reiterated the "colorable argument" from Scherk, and added the following:
 
 
 8
 The Court [in Scherk ] did not ... hold that Wilko would not apply in the context of a Sec. 10(b) or Rule 10b-5 claim, and Wilko has retained considerable vitality in the lower federal courts. Indeed, numerous District Courts and Courts of Appeals have held that the Wilko analysis applies to claims arising under Sec. 10(b) ... and that agreements to arbitrate such claims are therefore unenforceable....
 
 
 9
 Dean Witter and amici representing the securities industry urge us to resolve the applicability of Wilko to claims under Sec. 10(b) and Rule 10b-5. We decline to do so.
 
 
 10
 470 U.S. at 215 n. 1, 105 S.Ct. at 1240 n. 1. In a concurring opinion, Justice White reemphasized that whether 10b-5 claims are arbitrable was "a matter of substantial doubt," and expanded on Scherk 's reasoning as to why the Wilko analysis might be inappropriate in the 10b-5 context. Id., 105 S.Ct. at 1244 (White, J., concurring).
 
 III.
 A.
 
 11
 The differences noted by the Supreme Court in Scherk and Byrd between the section 12(2) action held non-arbitrable in Wilko and the 10b-5 action at issue here are significant enough to merit discussion. Indeed, in light of Scherk and Byrd we are inclined to agree with appellants that Wilko is distinguishable from this case and hence is not "controlling" in the narrow sense of the term. That Wilko may be distinguished, however, does not necessarily mean that Wilko should not be followed. Our task is to determine whether, despite the differences, the similarities between the section 12(2) and 10b-5 causes of action are such that under the circumstances it makes sense to follow Wilko and thus to hold that 10b-5 claims, like those arising under section 12(2), are not subject to arbitration.
 
 B.
 
 12
 Although not discussing the issue in detail, the panel in Sibley concluded that the holding of Wilko is applicable to 10b-5 cases because the similarities between section 12(2) and 10b-5 actions outweigh the differences. We too find the similarities more compelling.
 
 
 13
 The purpose of the 1933 and 1934 Acts is the same: "to protect investors" by requiring "full and fair disclosure" in connection with securities transactions. See Wilko, 346 U.S. at 431, 74 S.Ct. at 184; Rudolph v. Arthur Andersen & Co., 800 F.2d 1040, 1043 (11th Cir.1986). One act concerns itself with the issuance of securities and the other with post-issuance transactions, but that does not suggest that they should be treated differently with respect to arbitration.
 
 
 14
 Both section 12(2) and 10b-5 "create[ ] a special right to recover for misrepresentation which differs substantially from the common-law action." Wilko, 346 U.S. at 431, 74 S.Ct. at 184. In finding section 12(2) to create a "special right" the Wilko Court focused on the fact that under section 12(2) the defendant "is made to assume the burden of proving lack of scienter." Wilko, 346 U.S. at 431, 74 S.Ct. at 184. This is not so under 10b-5. See Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193, 96 S.Ct. 1375, 1380, 47 L.Ed.2d 668 (1976) (under 10b-5 plaintiff must plead and prove defendant's scienter). Nevertheless, the 10b-5 action is also a special one unknown at common law.
 
 
 15
 Together the section and the rule aim at reaching "misleading or deceptive activities, whether or not they are precisely and technically sufficient to sustain a common law action...." They are ... designed to encompass the infinite variety of devices that are alien to the "climate of fair dealing" ... that Congress sought to create and maintain.
 
 
 16
 Herpich v. Wallace, 430 F.2d 792, 802 (5th Cir.1970).
 
 
 17
 Scherk and Byrd correctly point out that the section 12(2) action is expressly provided for, while the 10b-5 action is merely implied. To our knowledge the only suggestion as to how the express/implied distinction makes any difference was by Justice White in his concurrence in Byrd. Justice White observed that the Wilko Court found significance in the fact that a section 12(2) plaintiff was given the right to choose either a state or federal forum. Byrd, 105 S.Ct. at 1244 (White, J., concurring). Noting that the 1933 Act declares "void" any attempt to "waive compliance" with the Act, see 15 U.S.C. Sec. 77n, the Court in Wilko found that a provision compelling arbitration amounts to an agreement by the securities buyer to waive his right to select the forum and hence is void. Wilko, 346 U.S. at 434-35, 74 S.Ct. at 186-87. Justice White in Byrd noted the existence of a similar prohibition in the 1934 Act against "waiv[ing] compliance with any provision of this chapter," but found it inapplicable since the 10b-5 action was merely implied and hence literally not a "provision of this chapter." See 470 U.S. at 224, 105 S.Ct. at 1244 (White, J., concurring) (citing 15 U.S.C. Sec. 78cc(a)).[5]
 
 
 18
 We respectfully disagree. The 1934 Act provides that the federal courts are to have "exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder." 15 U.S.C. Sec. 78aa. This sweeping language applies to all actions brought under the 1934 Act, including implied actions such as the 10b-5 action. See Clark v. Watchie, 513 F.2d 994, 997 (9th Cir.) (citing Abramson v. Pennwood Investment Corp., 392 F.2d 759, 762 (2d Cir.1968)), cert. denied, 423 U.S. 841, 96 S.Ct. 72, 46 L.Ed.2d 60 (1975). Regardless of whether the 10b-5 action itself is considered a "provision of this chapter," the exclusive jurisdiction provision is undisputably such a "provision," which, under the Wilko rationale, should not be considered waivable.[6]
 
 
 19
 The Wilko Court did not rest its decision solely on the statutory prohibition against waiver. It also noted policy reasons for protecting a potential plaintiff's right to select the forum.
 
 
 20
 When the security buyer, prior to any violation of the Securities Act, waives his right to sue in courts, he gives up more than would a participant in other business transactions. The security buyer has a wider choice of courts and venue. He thus surrenders one of the advantages the Act gives him and surrenders it at a time when he is less able to judge the weight of the handicap the Securities Act places upon his adversary.
 
 
 21
 346 U.S. at 435, 74 S.Ct. at 187. This reasoning is not precisely applicable in the 10b-5 context, since federal jurisdiction over 10b-5 claims is exclusive, but the Court's concern with a security buyer surrendering his advantage nevertheless applies with nearly equal force. Although 10b-5 does not give a plaintiff the right to choose either federal or state court, it does permit a plaintiff to obtain a federal forum without having to meet the requirements of diversity jurisdiction--something which, for one reason or another, plaintiffs often find advantageous.
 
 
 22
 The Wilko Court also expressed some doubts about the effectiveness of arbitration in protecting the rights of the plaintiff. The Court noted that in a section 12(2) case the arbitrators' determinations as to the legal meaning of such key terms as "material fact" could not be examined, and concluded that "[a]s the protective provisions of the Securities Act require the exercise of judicial discretion to fairly assure their effectiveness, it seems to us that Congress must have intended [the anti-waiver provision] to apply to waiver of judicial trial and review." 346 U.S. at 436-37, 74 S.Ct. at 187-88.
 
 
 23
 This particular rationale for Wilko may be less compelling today in light of the Supreme Court's belief that "we are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals inhibited the development of arbitration as an alternative means of dispute resolution." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., --- U.S. ----, ----, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985). Be that as it may, to our knowledge the Supreme Court has not suggested that Wilko should no longer be applied in its own context of section 12(2) cases. The Court may have concluded, and in any event it is our belief, that the Wilko Court's other justifications for its decision are sufficient to give Wilko continuing force even though the Court's attitude toward arbitration has changed since Wilko was decided. It is those other justifications, considered at length above, which we find persuasive in convincing us that there is no principled ground for distinguishing between sections 12(2) and 10(b) with respect to arbitration.
 
 IV.
 
 24
 Congress' 1975 amendments to the securities laws reinforce our determination that 10b-5 claims are not arbitrable. The 1975 amendments enacted the "most substantial and significant revision of this country's federal securities laws since the passage of the Securities Exchange Act of 1934." Securities Acts Amendments of 1975: Hearings on S. 249 Before the Subcomm. on Securities of the Senate Comm. on Banking, Housing & Urban Affairs, 94th Cong., 1st Sess. 1 (1975). As part of that revision Congress enacted a provision, 15 U.S.C. Sec. 78bb(b), which had the effect of specifically permitting compulsory arbitration of securities claims between securities professionals. The conference report accompanying the legislation stated that
 
 
 25
 [i]t was the clear understanding of the conferees that this amendment did not change existing law, as articulated in Wilko v. Swan, 346 U.S. 427, [74 S.Ct. 182, 98 L.Ed. 168] (1953), concerning the effect of arbitration proceeding provisions in agreements entered into by [other] persons dealing with members and participants of self-regulatory organizations [i.e., securities professionals].
 
 
 26
 H.R.Rep. No. 229, 94th Cong., 1st Sess. 91, 111 (1975), reprinted in 1975 U.S.Code Cong. & Ad.News at 179, 321.
 
 
 27
 This is not a particularly clear statement of congressional intent. Indeed, both sides in the controversy before us rely on this language to support their positions. Appellees contend that Congress meant to endorse Wilko and the line of lower court cases extending Wilko to 10b-5 cases. Appellants, noting that few lower courts had yet considered the applicability of Wilko to 10b-5 claims, argue that Congress was aware of the then-recent Scherk decision and meant to confirm that Wilko did not extend to 10b-5 claims.
 
 
 28
 We are inclined to reject both of these interpretations and instead take the statement at face value, as an endorsement of Wilko itself and nothing more. Yet we note that Congress, in enacting a provision which it recognized would permit arbitration between securities professionals, declined to take further action. Congress was presumably aware that courts had begun to extend Wilko to 10b-5 claims, see, e.g., Greater Continental Corp. v. Schechter, 422 F.2d 1100, 1103 (2d Cir.1970), and that the Supreme Court's only response had been to note in Scherk that there was a "colorable argument" that Wilko was "not controlling" in such cases. Yet Congress passed up a clear opportunity to disavow this trend. We recognize that an inference from congressional silence is of somewhat limited value, and we would reach the same result without taking the 1975 amendments into account. Nevertheless, Congress's failure to halt the application of Wilko to 10b-5 in 1975, or at any point since then,[7] is at least some evidence that Congress "has been satisfied with, and adopted, the construction given to its enactment by the courts." Electric Storage Battery Co. v. Shimadzu, 307 U.S. 5, 14, 59 S.Ct. 675, 681, 83 L.Ed. 1071 (1939).
 
 V.
 
 29
 Since Sibley was decided, a number of other circuits have considered whether 10b-5 claims are arbitrable. Each was aware of the "colorable argument" set forth in Scherk that 10b-5 claims are arbitrable. Nevertheless, with but one exception[8] each court has held that they are not. See McMahon v. Shearson/American Express, Inc., 788 F.2d 94, 98 (2d Cir.1986); De Lancie v. Birr, Wilson & Co., 648 F.2d 1255, 1258-59 (9th Cir.1981) (unspecified "churning" case); Mansbach v. Prescott, Ball & Turben, 598 F.2d 1017, 1030 (6th Cir.1979); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Moore, 590 F.2d 823-29 (10th Cir.1978); Weissbuch v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 558 F.2d 831, 833-36 (7th Cir.1977); Ayres v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 538 F.2d 532, 536 (3d Cir.), cert. denied, 429 U.S. 1010, 97 S.Ct. 542, 50 L.Ed.2d 619 (1976). Only one of these decisions, holding 10b-5 claims non-arbitrable, McMahon, was also handed down after the Supreme Court's repetition of the Scherk argument in Byrd, but Byrd added nothing to Scherk. The majority decision in Byrd simply cited Scherk, noted the lower court precedent and reiterated that for the Court, whether 10b-5 claims are arbitrable is an open question.
 
 
 30
 We are aware that a number of district courts in this circuit have determined that pre-claim agreements to arbitrate 10b-5 claims are enforceable. They were mistaken in doing so. Sibley was the law in the former fifth circuit since 1976 and in this circuit since its formation. Sibley cited Scherk and declined to adopt its "colorable argument." Byrd, again, added nothing new. We recognize that the Supreme Court considers the issue open and may at some point expressly limit or overrule Wilko, but we agree with the second circuit that
 
 
 31
 it would be improvident for us to disregard clear judicial precedent in this Circuit based on mere speculation. We think that the orderly administration of justice will be best served if we as one of the inferior courts follow Supreme Court precedent and adhere to the settled law of this Circuit, and a fortiori the district courts should do likewise.
 
 
 32
 McMahon, 788 F.2d at 98.
 
 
 33
 The district court's judgment in No. 85-3352 is AFFIRMED in part and REVERSED in part with directions that the district court grant the motion to arbitrate the state law claims. The district court's judgment in No. 85-5419 is AFFIRMED.[9]
 
 
 34
 TJOFLAT, Circuit Judge, concurring in which HILL, Circuit Judge, joins:
 
 
 35
 Section 14 of the Securities Act of 1933 (1933 Act) provides as follows: "Any condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision of this subchapter or of the rules and regulations of the Commission shall be void." 15 U.S.C. Sec. 77n (1982). In Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), the Supreme Court held that this provision rendered unenforceable an agreement to arbitrate a future controversy arising under section 12(2) of the 1933 Act, 15 U.S.C. Sec. 77l (2) (1982). Absent section 14, the agreement to arbitrate would have been enforceable pursuant to the Federal Arbitration Act, 9 U.S.C. Secs. 1-14 (1982). The issue before the en banc court is whether an agreement to arbitrate a future controversy arising under section 10(b) of the Securities Exchange Act of 1934 (1934 Act), 15 U.S.C. Sec. 78j(b) (1982), is enforceable.
 
 
 36
 The 1934 Act contains a provision that is nearly identical to section 14 of the 1933 Act. Section 29 of the 1934 Act contains the following language: "Any condition, stipulation, or provision binding any person to waive compliance with any provision of this chapter or of any rule or regulation thereunder, or of any rule of an exchange required thereby shall be void." 15 U.S.C. Sec. 78cc(a) (1982). The Supreme Court in Wilko held that section 14 of the 1933 Act took precedence over the policies underlying the Federal Arbitration Act and prevented enforcement of an agreement to arbitrate a 1933 Act dispute. Section 29 of the 1934 Act essentially replicates section 14 of the 1933 Act. Under the teaching of Wilko, therefore, we must conclude that section 29 of the 1934 Act overrides the Federal Arbitration Act and renders unenforceable agreements to arbitrate 1934 Act disputes. There is no principled means of arriving at a contrary interpretation regarding the 1933 and 1934 Acts.
 
 
 37
 It is of no avail to attempt to draw the distinction that a section 12(2) private cause of action is expressly provided for in the statute whereas a section 10(b) private action is implied. To say that a private cause of action is implied is to say that Congress intended such an action to exist. See, e.g., Merrill Lynch, Pierce, Fenner & Smith v. Curran, 456 U.S. 353, 377-78, 102 S.Ct. 1825, 1838-39, 72 L.Ed.2d 182 (1982); Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 15-16, 100 S.Ct. 242, 245, 62 L.Ed.2d 146 (1979). It is as if Congress explicitly provided for the cause of action. Because Congress intended to create a section 10(b) cause of action, it also intended section 29 to be applicable to it, and the inquiry before us is no different than the one before the Court in Wilko.
 
 
 38
 Were I writing on a clean slate, I might well be inclined to reach a result contrary to the Wilko Court. Section 14 of the 1933 Act renders void any provision binding a security purchaser to "waive compliance with any provision of this subchapter" or the relevant rules and regulations thereunder. 15 U.S.C. Sec. 77n (1982). A fair reading of this statute would prevent a purchaser from waiving a seller's compliance with the substantive provisions of the Act, i.e., its reporting and disclosure requirements. By agreeing to arbitrate, the purchaser does not waive the Act's protections, but merely agrees to enforce the Act's provisions in a forum other than the courts. We must follow Wilko, however, and I accordingly concur fully in the court's holding that section 10(b) claims are not subject to pre-dispute arbitration agreements.[1]
 
 
 
 *
 Honorable R. Lanier Anderson, Circuit Judge, did not participate in the consideration or disposition of this appeal
 
 
 **
 Honorable Albert J. Henderson, Senior Circuit Judge, has elected to participate in the consideration and disposition of this case. 28 U.S.C. Sec. 46(c)
 
 
 [1]
 Appellees' individual brokers at E.F. Hutton and Merrill Lynch were also named as defendants
 
 
 [2]
 We use "10b-5" to refer both to Rule 10b-5 and to section 10(b)
 
 
 [3]
 We reinstate the panel opinions--Wolfe v. E.F. Hutton & Co., 780 F.2d 1032 (11th Cir.1985); Gorman v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 780 F.2d 1032 (11th Cir.1985) (consolidated appeals)--insofar as it concerns the state claims in both cases
 
 
 [4]
 We use the term "arbitrable" to refer to the enforceability of a pre-claim agreement to arbitrate by a securities professional as against a non-professional. The arbitrability of 10b-5 claims pursuant to a post-claim agreement, or without either parties' objection, or between securities professionals, see infra p. 1037, is not at issue here and is hence beyond the scope of this opinion
 
 
 [5]
 The same provision also prohibits waiver of compliance with "any rule or regulation" promulgated under the Act. 15 U.S.C. Sec. 78cc(a). Under Justice White's reasoning, however, the provision is still not violated by an agreement to arbitrate 10b-5 claims since such an agreement does not waive compliance with the actual rule, but only bars resort to the implied judicial remedy
 
 
 [6]
 The 1934 Act thus includes "protection against waiver of the right to a judicial forum." See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., --- U.S. ----, 105 S.Ct. 3346, 3355, 87 L.Ed.2d 444 (1985)
 
 
 [7]
 Several less significant amendments have been made since 1975
 
 
 [8]
 In a 2-1 panel decision, the eighth circuit recently became the only circuit to hold that agreements to arbitrate 10b-5 claims are enforceable. Phillips v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 795 F.2d 1393 (8th Cir.1986). The court essentially adopted the "colorable argument" set forth in Scherk and Byrd and Justice White's argument in his Byrd concurrence. We have discussed those arguments and our reasons for rejecting them at length above. See supra part IIB
 
 
 [9]
 Appellee Gorman also argues that arbitration of his 10b-5 claim is precluded by SEC Rule 15c2-2, 17 C.F.R. Sec. 240.15c2-2. This argument is properly before us since a district court's judgment may be affirmed on any ground, regardless of whether the ground was relied upon by the district court. Bickford v. International Speedway Corp., 654 F.2d 1028, 1031 (5th Cir. Unit B 1981). In light of our holding on the Wilko issue, however, we need not reach the issue today
 
 
 [1]
 In addition to the constraints imposed by the Wilko decision, I also recognize that in the years following Wilko, the Congress may have indicated its satisfaction with the state of the law in this area