815 F.2d 655
 Blue Sky L. Rep. P 72,606, Fed. Sec. L. Rep. P 93,246,
RICO Bus.Disp.Guide 6621
 Richard D. DRISCOLL, Plaintiff-Appellant,
v.
SMITH BARNEY, HARRIS, UPHAM & CO., Richard Shalla,
Defendants-Appellees.
Edward J. ADRIAN, Ruth C. Adrian, Plaintiffs-Appellants,
v.
SMITH BARNEY, HARRIS, UPHAM & CO., INC., a Delaware
corporation, Morton L. Annis, Jr., Albert Roberts,
III, Defendants-Appellees.
 Nos. 85-5921, 85-3816 and 86-3009.
 United States Court of Appeals, Eleventh Circuit.
 April 28, 1987.
 
 Russell L. Forkey, Layne Verebay, Ft. Lauderdale, Fla., for plaintiff-appellant in No. 85-5921.
 Robert B. Goldman, Ruden, Barnett, McClosky, Schuster & Russell, P.A., Bennett Falk, Keith Olin, Miami, Fla., for defendants-appellees in No. 85-5921.
 Kirk M. Gibbons, John B. Gibbons, Tampa, Fla., for plaintiff-appellants in Nos. 85-3816 and 86-3009.
 Kathy M. Klock, Miami, Fla., for Annis.
 O'Bannon M. Cook, Ruden, Barnett, McClosky, Bennett Falk, Robert B. Goldman, Tallahassee, Fla., Keith Olin, Miami, Fla., for Smith Barney, Inc. and Roberts.
 Appeal from the United States District Court for the Southern District of Florida.
 Appeal from the United States District Court for the Middle District of Florida.
 Before VANCE and ANDERSON, Circuit Judges, and ARONOVITZ,* District Judge.
 VANCE, Circuit Judge:
 
 
 1
 These separate suits arise out of the alleged mismanagement of securities accounts by Smith Barney, Harris, Upham & Co. (Smith Barney) and its employees. Richard Driscoll asserts claims against Smith Barney and Richard Shalla for violations of Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 (the 1934 Act) and for breach of fiduciary duty under Florida law. Edward and Ruth Adrian also allege violations of Section 10(b) and Rule 10b-5 of the 1934 Act and breach of fiduciary duty, along with claims under the federal Racketeer Influenced and Corrupt Organization Act (18 U.S.C. Secs. 1961-68), the Florida Racketeer Influenced and Corrupt Organization Act (Fla.Stat. Chap. 895), the Florida Securities and Investor Protection Act (Fla.Stat. Chap. 517), and state law negligence, gross negligence, fraud, conversion, and breach of contract. Upon setting up their accounts, the Adrians and Driscoll signed agreements which included clauses providing that disputes relating to these accounts would be subject to arbitration. Pursuant to these brokerage agreements, the district courts in these two cases granted Smith Barney's motions to compel arbitration on all claims. 625 F.Supp. 25 (S.D.Fla.1985). Plaintiffs now contend that the district courts erred in compelling arbitration.[1]
 
 A. Federal Securities Law Claims
 
 2
 The first issue before this court is whether claims brought under Section 10(b) of the 1934 Act are subject to arbitration. This precise issue was recently taken up by this court sitting en banc. Wolfe v. E.F. Hutton & Co., 800 F.2d 1032 (11th Cir.1986). In Wolfe, this court held that pre-claim agreements to arbitrate 10b-5 claims are not enforceable. In light of this recent decision, we reverse the portion of the district courts' orders compelling arbitration of plaintiffs' federal securities law claims.[2]
 
 B. Federal RICO Claims
 
 3
 The Adrians allege violations of the federal RICO statute. Unlike the typical state or federal claim, a RICO claim must be based on underlying, independently unlawful acts. See 18 U.S.C. Secs. 1961-62; Greenblatt v. Drexel Burnham Lambert, Inc., 763 F.2d 1352, 1361 (11th Cir.1985). This unique feature of RICO presents special problems in determining whether RICO claims are subject to arbitration under a pre-claim agreement. In Tashea v. Bache, Halsey, Stuart, Shields, Inc., 802 F.2d 1337 (11th Cir.1986), this court held that federal RICO claims based on violations of the federal securities laws are not subject to compelled arbitration. Since the underlying acts in the Adrians' federal RICO claim are federal securities law violations, Tashea mandates that the district court decide this claim.
 
 C. State Law Claims
 
 4
 In concluding that federal RICO claims based on federal securities law violations are not arbitrable, the Tashea court relied on the fact that in this circuit, according to Wolfe v. E.F. Hutton & Co., 800 F.2d 1032 (11th Cir.1986) (en banc), the underlying predicate acts were not arbitrable. The Tashea court reasoned:
 
 
 5
 Consistency in the orderly adjudication of these claims would seem to require the RICO claim to be decided in the same forum as the separate federal securities claims.
 
 
 6
 802 F.2d at 1338.
 
 
 7
 Along with enumerating a number of state law crimes as constituting "racketeering activity," the Florida statute incorporates "[a]ny conduct defined as 'racketeering activity' under 18 U.S.C. Sec. 1961(1)(A), (B), (C), and (D)." Fla.Stat. Sec. 895.02(1)(b). This statutory scheme permits the predicate acts for the Florida RICO claim to be federal securities law violations which are not arbitrable.
 
 
 8
 In the interest of consistency, Tashea would seem to require that the Florida RICO claim be decided in the same forum--the federal courts--as the separate federal securities claims on which it is based. This conclusion, however, would be contrary to a fundamental precept of statutory interpretation. This court cannot create an exception to the Federal Arbitration Act, 9 U.S.C. Secs. 1-14, absent some indication, whether express or implied, of congressional intent for such an exception. As the Third Circuit recently commented in light of the Supreme Court's opinion in Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985), which held that antitrust claims against foreign corporations are arbitrable: "It would appear therefore that determining statutory claims to be nonarbitrable on the basis of some judicially recognized public policy rather than as a matter of statutory interpretation is no longer permissible." Jacobson v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 797 F.2d 1197, 1202 (3rd Cir.1986).
 
 
 9
 The Securities Act of 1933 and the Securities Exchange Act of 1934 provide the congressional intent to exclude claims under Sections 12(2) and 10(b) of those respective acts from the mandate of the Federal Arbitration Act. Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953); Wolfe v. E.F. Hutton & Co., 800 F.2d at 1032. The congressional intent that federal RICO claims not be subjected to arbitration is found by more subtle implication: "the unique structure of the RICO statute which cross-references other predicate statutes," Jacobson v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 797 F.2d at 1202. We have no indication by way of statutory enactment that Congress intended to likewise exclude state RICO claims. Indeed Congress could not have remotely foreseen the enactment by states of statutes patterned after its own. Nor can it be said that excluding state RICO claims from the mandate of the Federal Arbitration Act is necessary to effectuate some congressional purpose. We must therefore hold that the Adrians' Florida RICO claims are subject to arbitration.
 
 
 10
 Controlling authority requires that plaintiffs' other state law claims be arbitrated. In Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), the Supreme Court concluded that arbitration agreements are enforceable with respect to state law claims, even if the accompanying federal securities law claims proceed to trial. The Court's language in Byrd is unequivocal.
 
 
 11
 [T]he Arbitration Act requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums.
 
 
 12
 105 S.Ct. at 1241. See also Coleman v. Prudential Bache Securities, Inc., 802 F.2d 1350 (11th Cir.1986); Wolfe v. E.F. Hutton & Co., 800 F.2d 1032 (11th Cir.1986) (en banc).
 
 
 13
 In an attempt to evade Byrd, plaintiffs raise a number of challenges to the arbitration agreements employed by Smith Barney. Plaintiffs charge that these agreements to arbitrate are not valid contracts because they were fraudulently induced, were unconscionable adhesion contracts, and lacked mutuality of obligation. Plaintiffs are correct that a court may not order arbitration unless and "until it is satisfied that a valid arbitration agreement exists." Miller v. Drexel Burnham Lambert, Inc., 791 F.2d 850, 854 (11th Cir.1986). Their attacks on these arbitration agreements, however, do not survive close scrutiny. Plaintiffs produce no evidence to indicate that the arbitration agreements are adhesion contracts. They demonstrate neither a lack of "meaningful choice," Williams v. Walker-Thomas Furniture Co., 350 F.2d 445, 449 (D.C.Cir.1965), nor that the arbitration clauses are inherently unfair or oppressive. See Coleman v. Prudential Bache Securities, Inc., 802 F.2d at 1352; Surman v. Merrill Lynch, Pierce, Fenner & Smith, 733 F.2d 59, 61 n. 2 (8th Cir.1984). Similarly, plaintiffs fail to show a lack of mutuality of obligation. In return for plaintiffs' assent to the Customer Agreement, Smith Barney obligated itself to perform all the necessary services in connection with the maintenance of plaintiffs' accounts and, in particular, to submit any controversy relating to these accounts to arbitration.[3]
 
 
 14
 Plaintiffs' chief argument is that the arbitration agreements were fraudulently induced. Driscoll and the Adrians independently submitted affidavits to buttress this contention. The sum of their affidavits is the same: when each signed the Customer Agreement, Smith Barney's agent indicated that the investor's consent to the Customer Agreement was a mere formality required to transact business with Smith Barney and never informed the investor about the arbitration provision. The allegations contained in the affidavits, however, go to the formation of the entire contract rather than to any misrepresentation with respect to the arbitration clause. Under Prima Paint Corp. v. Flood & Conklin Manufacturing Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), where the claims of confusion and fraud go to the circumstances surrounding the signing of the contract as a whole, these allegations should be heard by an arbitrator and not by the district court. See also Coleman v. Prudential Bache Securities, Inc., 802 F.2d at 1352; Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu, 637 F.2d 391 (5th Cir. Unit B 1981).[4]
 
 
 15
 Despite their best efforts, plaintiffs have failed to adequately allege the invalidity of the arbitration agreements. We therefore affirm the district courts' orders compelling arbitration of plaintiffs' breach of fiduciary duty and other state law claims.
 
 D. Waiver
 
 16
 The Adrians further contend that Smith Barney waived its right to arbitrate his claims by failing to request arbitration within the thirty day period called for by the district court's order. This argument is without merit. Smith Barney's actions reflect a persistent and zealous effort to secure arbitration of the Adrians' claims. Any delay in Smith Barney's request for arbitration was entirely understandable since the Adrians had immediately appealed the order permitting arbitration. Given that any doubts about a waiver of arbitration must be resolved in favor of arbitration, Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 941-942, 74 L.Ed.2d 765 (1983), the Adrians clearly have not met their "heavy burden" of proving waiver. See Belke v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 693 F.2d 1023, 1025 (11th Cir.1982).
 
 E. Motion to Amend
 
 17
 The district court also denied the Adrians' motion to amend their complaint. Federal Rule of Civil Procedure 15(a) provides that "[a] party may amend his pleadings once as a matter of course at any time before a responsive pleading is served...." Defendants' only filing prior to the motion to amend was their motion to dismiss and to compel arbitration. Such a motion to dismiss is not a "responsive pleading." See, e.g., McGruder v. Phelps, 608 F.2d 1023, 1025 (5th Cir.1979); Barksdale v. King, 699 F.2d 744, 747 (5th Cir.1983). Therefore, the Adrians' right to amend their complaint as a matter of course remained unimpeded.[5]
 
 F. Conclusion
 
 18
 The district court's judgment in No. 85-5921 is AFFIRMED as to the state claim and REVERSED as to the federal claims. That case is REMANDED with directions that the district court deny defendants' motion to arbitrate the federal securities law claims. The district court judgment in No. 85-3816 and No. 86-3009 is also AFFIRMED as to the state claims and REVERSED as to the federal claims. Those cases are REMANDED with directions that the district court deny defendants' motion to arbitrate the federal securities law claims and the federal RICO claims, and that the district court grant plaintiffs' motion to amend their complaint.
 
 
 19
 AFFIRMED in part. REVERSED in part and REMANDED with directions.
 
 
 
 *
 Honorable Sidney M. Aronovitz, U.S. District Judge for the Southern District of Florida, sitting by designation
 
 
 [1]
 This court has jurisdiction under 28 U.S.C. Sec. 1292(a)(1) to review a district court order compelling arbitration. See Miller v. Drexel Burnham Lambert, Inc., 791 F.2d 850, 853 (11th Cir.1986)
 
 
 [2]
 We note, however, that the Supreme Court has granted review to resolve a split among the circuit courts on this very issue. Shearson/American Express, Inc. v. McMahon, --- U.S. ----, 107 S.Ct. 60, 93 L.Ed.2d 20 (1986)
 
 
 [3]
 The Adrians also are incorrect in arguing that the absence of the Smith Barney representative's signature on the Customer Agreement proves a lack of mutuality of obligation. Cf. Associated Hardware Supply Co. v. Big Wheel Distributing Co., 355 F.2d 114 (3d Cir.1965); Starkman v. Seroussi, 377 F.Supp. 518 (S.D.N.Y.1974)
 
 
 [4]
 Appellants also fail to allege fraud in the "factum" since the claimed misrepresentation by defendants does not go to the very character or essential terms of the proposed contract. See Cancanon v. Smith Barney, Harris, Upham & Co., 805 F.2d 998 (11th Cir.1986)
 
 
 [5]
 The decision to deny the motion to amend was also premised on the incorrect belief that all of the plaintiffs' claims were arbitrable