**Thomas and Maryann RUSSO, Plaintiffs,**

v.

**Leonard SIMMONS and Shearson Lehman Hutton, Inc., Defendants.**

**No. 88 Civ. 8201 (PKL).**

United States District Court, S.D. New York.

Oct. 23, 1989.

---

Beigel & Sandler, Ltd., New York City (Lewis S. Sandler, of counsel), for plaintiffs.

Shanley & Fisher, New York City (Matthew Farley, Ronald V. Fizzarotti, of counsel), for defendants.

## ORDER & OPINION

LEISURE, District Judge:

Plaintiffs Thomas and Maryann Russo bring this action against Shearson Lehman Hutton, Inc. ("Shearson Lehman Hutton") and Leonard Simmons, an account executive formerly at E.F. Hutton's White Plains offices. Plaintiffs allege that defendants violated Section 10(b) of the Securities Exchange Act of 1934, committed common law fraud, and breached their fiduciary duties to plaintiffs in connection with a brokerage account maintained by plaintiffs at E.F. Hutton. Defendants answered the complaint, asserting affirmative defenses and denying liability. Defendants now move this Court to compel arbitration of plaintiffs' claims pursuant to a signed arbitration agreement between the parties. Plaintiffs argue in response that 1) defendants waived their right to seek arbitration because of action already taken in the action before this Court, and 2) plaintiffs were fraudulently induced into signing the arbitration agreement.

## BACKGROUND

Plaintiffs Thomas and Maryann Russo opened a securities account with E.F. Hutton in 1983. Mr. Russo had previously suffered a job-related injury and successfully sued for damages. Unable to continue work, he deposited his award in a brokerage account hoping that the returns would generate a stable income for his family. Unfortunately, the investments chosen by E.F. Hutton did not succeed, and the Russos suffered significant losses between 1983 and 1986. Affidavit of Thomas Russo sworn to on July 6, 1989, ¶ 3. From the end of 1986, the Russos did not invest any new money with E.F. Hutton.

In early 1988, Shearson Lehman acquired E.F. Hutton, and the Russos' account was transferred to the new corporation. In the months prior to the combination, both companies sent out mailings heralding the benefits of the new firm and explaining changes in the administration of accounts. In April, 1988, the new entity, defendant Shearson Lehman Hutton, sent to plaintiffs a Client Agreement with a cover letter asking that it be reviewed and signed "immediately." Plaintiffs' Exhibit E. The Client Agreement consists of two pages of fine print covering a wide range of subjects from fees to investment of credit balances to liquidation of collateral. Paragraph 23 of the agreement is entitled "Arbitration and Governing Law" and reads in part:

Any controversy arising out of or relating to any of my [plaintiffs'] accounts, to transactions with you [Shearson Lehman Hutton], your officers, directors, agents and/or employees for me, or to this agreement or the breach thereof, or relating to transactions or accounts maintained by me with any of your predecessor firms by merger, acquisition or other business combination from the inception of such accounts, shall be settled by arbitration, in accordance with the rules then in effect by the NASD [National Association of Securities Dealers]....

Both plaintiffs signed the Customer Agreement on April 29, 1988, and returned it to Shearson Lehman Hutton.

On November 15, 1988, the Russos filed a complaint with this Court, alleging that the investments made for them by defendant Simmons, while he was working for E.F. Hutton, were "high-risk" mutual funds and limited partnerships, entirely unsuited for the financial objectives of the

Russos. Complaint, ¶¶ 21, 24, 32. Plaintiffs claim that Simmons intentionally misled them as to what were appropriate investments for their needs and thus violated statutory and common law duties. Complaint, ¶¶ 36, 41, 44. Shearson Lehman Hutton was named as a defendant, as well as in its capacity as successor firm to E.F. Hutton.

Defendants at that time retained the law firm of Myerson and Kuhn to handle the matter. Myerson and Kuhn answered the complaint on February 10, 1989, asserting fifteen affirmative defenses and denying all liability for plaintiffs' losses. No mention was made in the answer of the arbitration agreement or the possibility of arbitrating plaintiffs' claims. As it turned out, neither plaintiffs, plaintiffs' counsel, nor defendants' counsel were then aware of the arbitration agreement.

On February 21, 1989, Myerson and Kuhn made a discovery request on behalf of defendants. The request consisted of all documents concerning any investment made or considered by plaintiffs (especially the investments made by defendant Simmons for plaintiffs' account at E.F. Hutton), all records of communication between plaintiffs and defendants, all records of Mr. Russo's successful personal injury lawsuit, and much information on the financial situation of the plaintiffs, including records of the "significant losses" alleged in the complaint, all bank statements, and all state and federal tax returns. In response, plaintiffs claim to have transferred over 1000 pages of documents to defendants' counsel. Russo Affidavit, ¶ 8. The depositions of both Mr. and Mrs. Russo were also scheduled, but they never took place.

On May 2, 1989, defendants' present counsel were substituted for Myerson and Kuhn. During the final week of May, defendants' new counsel learned of the Client Agreement entered into by plaintiffs during the combination of Shearson Lehman and E.F. Hutton. It was at this time only that counsel became aware of the arbitration clause. Affidavit of Matthew Farley, Esq., sworn to on June 8, 1989, ¶ 7. On June 9, defendants moved this Court to compel arbitration pursuant to the arbitration agreement and to stay the judicial proceedings.

## DISCUSSION

Plaintiffs argue that defendants have waived their right to arbitration, due to actions taken already in this judicial proceeding, and that defendants fraudulently induced plaintiffs to enter into the arbitration agreement. Each argument will be considered in turn.

### A. Waiver of Arbitration

In *Rush v. Oppenheimer & Co.*, 779 F.2d 885 (2d Cir.1985), the Second Circuit stated that due to the strong federal policy favoring arbitration, waivers of arbitration will not be "lightly inferred." *Rush, supra,* 779 F.2d at 887 (*quoting Carcich v. Rederi A/B Nordie,* 389 F.2d 692, 696 (2d Cir. 1968)). In fact, the Supreme Court has noted that in all disputes over the propriety of arbitration, any doubts should be resolved in favor of arbitration. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). The rule set out by the Second Circuit in *Rush* is that "waiver of the right to compel arbitration due to participation in the litigation may be found only when prejudice to the other party is demonstrated." *Rush, supra,* 779 F.2d at 885, *citing Demsey & Associates, Inc. v. S.S. Sea Star,* 461 F.2d 1009, 1018 (2d Cir.1972) and *Carcich, supra,* 389 F.2d at 696. For example, "[L]itigation of substantial issues going to the merits may constitute a waiver of arbitration." *Sweater Bee By Banff v. Manhattan Industries,* 754 F.2d 457, 461 (2d Cir. 1985) (*citing Demsey, supra,* 461 F.2d at 1017–18 and *Weight Watchers, Ltd. v. Weight Watchers International, Inc.,* 398 F.Supp. 1057, 1058–62 (E.D.N.Y.1975)).

In *Rush*, the plaintiff commenced a lawsuit in federal court alleging securities fraud despite an arbitration agreement between the parties. The complaint was filed on May 10, 1984. On December 31, defendant moved to compel arbitration. The District Court held that defendant had

waived the right to arbitrate: "Oppenheimer's extensive involvement over the course of eight months in the litigation, including taking rather extensive discovery, bringing a motion to dismiss, and posing thirteen affirmative defenses to the amended complaint, all without raising the right to arbitration, constitutes prejudice to Rush and a waiver of the right to arbitrate." *Rush v. Oppenheimer*, 606 F.Supp. 300, 301 (S.D. N.Y.1985) (Sweet, J.). The Second Circuit reversed, however, holding that "none of the factors cited by the district court, whether viewed individually or in combination, warrants a finding of waiver of arbitration." *Rush, supra,* 779 F.2d at 887.

■■■ Delay alone, without any prejudice to the opposing party aside from expense and inconvenience, is insufficient to constitute waiver. *Rush, supra,* 779 F.2d at 887 *citing Carcich, supra,* 389 F.2d at 696. Plaintiffs argue that in *Rush,* the district court judge changed his mind as to the availability of punitive damages, and that this fact explains and excuses the delay of defendant in moving to compel arbitration. Thus *Rush* should be held to its facts. The Second Circuit does not seem concerned with the reasons behind the delay, however. The only exception might be a malicious strategy of delay pursued by the moving party. Here, the delay was caused by defendants' first counsel not being aware of the option to arbitrate, and then by the substitution of counsel. More importantly, plaintiffs have not demonstrated that they have been sufficiently prejudiced by the seven-month delay between the filing of the lawsuit and defendants' motion to compel arbitration.

Similarly, the discovery taken so far by defendants does not constitute waiver of their right to compel arbitration. It is true that in *Rush* the only discovery taken by the defendant related to claims that it thought were not arbitrable. The Second Circuit quoted the Seventh Circuit with ap-

proval: "[N]o waiver of the right to arbitrate can occur from conducting discovery on non-arbitrable claims." *Rush, supra,* 779 F.2d at 889 (*quoting Dickinson v. Heinold Securities, Inc.,* 661 F.2d 638, 642 (7th Cir.1981)). In determining whether discovery of documents concerning the arbitrable claims constitutes waiver, this Court will rely on the basic principle of prejudice which controls this case. The Second Circuit has previously noted that "[s]ufficient prejudice to infer waiver might be found, for example, if the party seeking the stay took advantage of judicial discovery procedures not available in arbitration." *Carcich, supra,* 389 F.2d at 696 n. 7 (citations omitted). The Securities and Exchange Commission has recently approved changes in the discovery procedures used by the National Association of Securities Dealers in arbitration. 54 Fed.Reg. 21144, (May 16, 1989). Under the new rules, the procedures would be increasingly formalized with greater involvement of the arbitrator and the use of prehearing conferences to guarantee that all relevant material be exchanged. 54 Fed.Reg. 21144, 21149–50. Due to the complex nature of plaintiffs' claims, all the documents delivered so far to defendants in the proceedings before this Court would almost certainly be discoverable in arbitration.[1] This Court therefore holds that plaintiffs have not been prejudiced by having to produce the documents in these proceedings.

### B. Fraudulent Inducement into Arbitration Agreement

■■■ Plaintiffs argue that defendants fraudulently induced them to enter into the arbitration agreement, and that this issue should be decided by the Court rather than the arbitrator. Plaintiffs allege that the only substantive part of the Client Agreement signed by the Russos after E.F. Hutton and Shearson Lehman combined was the arbitration agreement. Even if the

1. Defendants note in their reply brief: "Plaintiffs cannot seriously suggest that a modern commercial arbitration panel in New York City would not require production of: 1) all documents relating to the subject investments, 2) tax returns and income records in a suitability case, and 3) records of other investments and brokerage accounts. Indeed, many of these documents would already be in a defendant broker-dealer's possession even absent discovery." Defendants' reply brief at 4.

Russos had not signed the Client Agreement, they allege, their account would have continued to be serviced as normal. Plaintiffs claim that

> Shearson's persistent and repeated preagreement announcements that lacked any reference whatsoever to this new significant provision, coupled with threats of interruption in service, were designed to prevent Hutton's unsuspecting clients like the Russos to sign without realizing that they were being misled into agreeing to arbitrate their then existing claims against Hutton.

Plaintiffs' brief at 11.

Section 4 of the Federal Arbitration Act states that "[t]he Court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration...." 9 U.S.C. § 4. In *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), the Supreme Court interpreted this provision to mean that

> if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the "making" of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally.

*Prima Paint, supra*, 388 U.S. at 403–04, 87 S.Ct. at 1805–06. This rule has recently been cited with approval by the Supreme Court. *Southland Corporation v. Keating*, 465 U.S. 1, 11, 104 S.Ct. 852, 858, 79 L.Ed.2d 1 (1984).

In *Driscoll v. Smith Barney, Harris, Upham & Co.*, 815 F.2d 655 (11th Cir.1987), *cert. denied sub nom. Adrian v. Smith Barney, Harris, Upham & Co.*, 484 U.S. 914, 108 S.Ct. 261, 98 L.Ed.2d 218 (1987), the Eleventh Circuit confronted a situation similar to the case at bar. The agent for the investment company told the plaintiffs that execution of the Customer Agreement was a mere formality and had not disclosed the existence of the arbitration clause. The court cited *Prima Paint* in ordering arbitration on the grounds that plaintiffs' contentions of fraud went to the formation of the contract as a whole rather than the arbitration clause specifically. *Driscoll, supra*, 815 F.2d at 659.

The facts alleged in the complaint and the affidavit of Thomas Russo raise an issue of fraud going to the execution of the entire Client Agreement rather than just the arbitration clause. In order for this Court to entertain the fraud issue under the *Prima Paint* doctrine, plaintiffs would have to show that, aside from the arbitration clause, the rest of the Client Agreement was meaningless, a mere smokescreen in which to hide the arbitration clause and deceive plaintiffs. Aside from the arbitration clause, there are 28 other provisions in the Client Agreement. Some, it is true, are only formalities or state the obvious. But the bulk of the Client Agreement does deal with substantive issues. If there is an issue of fraud, it goes to the Client Agreement as a whole and is therefore for the arbitrator to consider.

### CONCLUSION

Defendants' motion to compel arbitration of all claims now before this Court is granted. The proceedings before this Court are hereby stayed pending arbitration.

SO ORDERED.